**Victor ZARVELA, Petitioner–Appellant,**

v.

**Christopher ARTUZ, Superintendent, Respondent–Appellee.**

**Docket No. 99–2757.**

United States Court of Appeals, Second Circuit.

Argued May 1, 2001.

Decided June 14, 2001.

As Amended June 26, 2001.

As Amended Aug. 17, 2001.

Randall U. Unger, Kew Gardens, NY, submitted a brief, for petitioner-appellant.

Thomas M. Ross, Asst. Dist. Atty., Brooklyn, NY, (Charles J. Hynes, Dist. Atty., Leonard Joblove, Asst. Dist. Atty., Brooklyn, NY, on the brief), for respondent-appellee.

Before JON O. NEWMAN and CABRANES, Circuit Judges; and THOMPSON,* District Judge.

JON O. NEWMAN, Circuit Judge.

The basic issue on this appeal concerns the timeliness of a habeas corpus petition. The more precise issues are (1) whether a district court confronted with a so-called "mixed petition" containing exhausted and unexhausted claims should dismiss the petition without prejudice to renewal after exhaustion, or stay further proceedings, and (2) if a stay is entered, whether the stay should be conditioned on prompt initiation of state court exhaustion and prompt return to federal court at the completion of exhaustion. These issues arise on an appeal by Victor Zarvela from the December 14, 1999, judgment of the District Court for the Eastern District of New York (Reena Raggi, District Judge), dismissing as untimely his habeas corpus petition to challenge his state court conviction. We conclude (1) that a district judge confronting a mixed petition has discretion either to dismiss the petition, or to dismiss only the unexhausted claims and stay the balance of the petition, (2) that in this case a stay should have been entered in response to Zarvela's request to have his mixed petition withdrawn in order to avoid untimeliness, and (3) that the stay should have been conditioned on Zarvela's prompt initiation of state court exhaustion and his

---

* Honorable Alvin W. Thompson, United States District Court for the District of Connecticut, sitting by designation.

prompt return to federal court after completion of exhaustion. Because with such a stay, Zarvela's petition would have remained timely, we reverse and remand.

## Background

Zarvela was convicted of weapons possession and second-degree murder in New York Supreme Court in 1992. The evidence permitted the jury to find that Zarvela sold drugs wholesale and that he shot one of his retailers. Zarvela was sentenced to 25 years to life. His conviction was affirmed by the Appellate Division in 1995, *People v. Zarvela*, 211 A.D.2d 690, 622 N.Y.S.2d 465 (1995), and review by the New York Court of Appeals was denied, *People v. Zarvela*, 86 N.Y.2d 743, 631 N.Y.S.2d 624, 655 N.E.2d 721 (1995). Zarvela then filed in the state trial court a motion to vacate the judgment, which was denied in 1995; the Appellate Division declined to hear the appeal of the denial.

On April 22, 1997, Zarvela delivered to prison officials a petition for a writ of habeas corpus. *See Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (timeliness of prisoner's filing measured from date papers handed to prison authorities for mailing). The petition presented five exhausted claims and two unexhausted claims. The petition was delivered two days before the one-year anniversary of the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA") and was therefore within AEDPA's one-year limitations period, 28 U.S.C. § 2244(d), as applied to habeas petitions challenging convictions that became final prior to AEDPA. *See Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir.1998). On May 26, 1997, Zarvela wrote the District Judge a letter, seeking permission to withdraw his petition, without prejudice to renewal at a later date, so that he could present a new claim to the state courts. Zarvela

explained that he had recently obtained through a freedom of information request exculpatory evidence that he believed would support a constitutional challenge to his conviction under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). On June 2, 1997, Judge Raggi endorsed the following ruling on the letter: "Motion to withdraw granted. Clerk to mark case closed. So ordered. Notice: All parties." However, her ruling was not entered on the docket until August 21, 1997.

On June 11, 1997, only nine days after Judge Raggi made her endorsement ruling and more than two months before her ruling was docketed, Zarvela delivered to prison officials a second motion to vacate his conviction, raising the new claim that he had mentioned in his letter to Judge Raggi. More than a year later, in July 1998, the state trial court denied Zarvela's motion on the ground that the evidence claimed to be exculpatory was available to Zarvela before trial. The Appellate Division denied leave to appeal on September 23, 1998.

On October 7, 1998, fourteen days after the Appellate Division's denial, Zarvela delivered a second federal habeas petition to prison officials. This petition included only the exhausted claims from the first petition (the two unexhausted claims from that petition were dropped), plus the new claim that had just been rejected by the state courts. This petition prompted Judge Raggi to re-open Zarvela's closed case.

Judge Raggi dismissed the petition as untimely. She concluded that Zarvela's petition was nine days late, according to the following calculation. First, Judge Raggi found that Zarvela had only two days of eligibility left when he initially filed his federal habeas petition on April 22, 1997. She deemed the one-year clock to

have stopped upon that initial filing. Then she deemed the clock to have restarted on September 26, 1998, three days after the state court denial of Zarvela's second collateral attack became final. In effect, Judge Raggi tolled several intervals: the time the initially filed federal petition had been pending, the time between her endorsement ruling and Zarvela's second state court motion, the time that motion was pending in the state courts, and three more days for Zarvela to get notice by mail of the Appellate Division's September 23, 1998, rejection, *see* Fed.R.Civ.P. 6(e).[1] The clock then ran for eleven days until Zarvela refiled his federal petition on October 7, 1998. Because Zarvela had only two days left on the one-year limitations period when he initially filed his habeas petition, Judge Raggi concluded that his refiled petition was nine days late. She also rejected his claims for equitable tolling based on circumstances in the prison where he was confined.

This Court granted a certificate of appealability, appointed counsel, and ordered briefing on the issues of (1) whether the refiled petition was timely, (2) whether the initially filed petition remained pending due to the lack of a judgment entered upon Judge Raggi's endorsement ruling, and (3) whether Judge Raggi should have stayed the initially filed petition, rather than dismissing it.

1. Rule 6(e) provides: "Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period."

2. Section 2244(b)(2) provides:

A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless-

## Discussion

■ This case illustrates the procedural complexities confronting a prisoner who endeavors to exercise his statutory right to challenge a state court conviction by means of a petition to a federal district court for a writ of habeas corpus. First, he is required to exhaust in the state courts any constitutional claim he seeks to present in federal court. *See Daye v. Attorney General,* 696 F.2d 186, 190–92 (2d Cir.1982) (in banc). If he fails to realize that one or more of his claims has not been fully exhausted (a matter that is not necessarily obvious), he will be considered to have filed a so-called "mixed petition," in which event the district court must either send him back to state court or afford him the opportunity to abandon his unexhausted claims and proceed only with his exhausted claims. *Rose v. Lundy,* 455 U.S. 509, 519–20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). If, after filing a habeas petition with fully exhausted claims, he wishes to present a new claim, he must endeavor to amend a still pending petition, *cf. Warren v. Garvin,* 219 F.3d 111, 114 (2d Cir.2000) (new claim does not relate back to dismissed petition), because filing the new claim in a second petition will encounter the severe limitations that AEDPA imposes on the filing of second or successive petitions.[2] 28 U.S.C. § 2244(b)(2). If his

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder

petition contains unexhausted claims that he wishes to pursue, he must return to state court and exhaust these claims. Finally, he must make sure that he has complied with the one-year statute of limitations that AEDPA establishes for filing habeas petitions. 28 U.S.C. § 2244(d).

AEDPA contains a tolling provision that partially ameliorates these procedural complexities. The time during which a properly filed application for state court post-conviction relief is pending in state courts is exempted from the one-year limitations period. 28 U.S.C. § 2244(d)(2). In addition, we have ruled that, under appropriate circumstances, the one-year period is subject to equitable tolling. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.2000). However, the time that a habeas petition is pending in federal court is not exempted from the one-year limitations period. *Duncan v. Walker*, 531 U.S. 991, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).

The appropriate disposition of a mixed petition was first considered by the Supreme Court in *Rose v. Lundy, supra.* The Court ruled that "a district court must dismiss such 'mixed petitions,' leaving the prisoner with the choice of returning to state court to exhaust his claims or amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Lundy*, 455 U.S. at 510, 102 S.Ct. 1198. That direction was given before Congress significantly altered habeas corpus procedure by imposing a one-year statute of limitations and sharply limiting the grounds for second or successive petitions. After AEDPA, the procedure for accomplishing complete exhaustion merits reconsideration for several reasons.

First, *Lundy* had no occasion to consider alternative procedures for accomplishing total exhaustion. The issue there was

only whether the habeas court should proceed to adjudicate a mixed petition. Some courts had said yes, and some had said no. *See id.* at 513 n. 5, 102 S.Ct. 1198. The Supreme Court ruled that a habeas court cannot proceed to adjudicate a mixed petition. The Court never discussed whether dismissing a petition's unexhausted claims and staying its exhausted claims could provide an acceptable alternative to dismissing the petition in its entirety.

Second, the enactment of AEDPA has altered the context in which the choice of mechanics for handling mixed petitions is to be made. Before AEDPA, there was no statute of limitations. In that context, Justice O'Connor could write, "[O]ur interpretation of §§ 2254(b), (c) provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Id.* at 520, 102 S.Ct. 1198. With unlimited time, a prisoner could leisurely consider all possible federal claims and develop state court writs to exhaust them. After AEDPA, the prisoner has just one year. If he mistakenly comes to federal court too soon, *i.e.*, with one or more unexhausted claims, and does so late in the allotted one year, a dismissal of his mixed petition risks the loss of all of his claims because the one-year limitations period will likely expire during the time taken to initiate state court exhaustion and to return to federal court after exhaustion is completed.

Third, what *Lundy* is primarily about is well captured in the following statement:

Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doc-

would have found the applicant guilty of the underlying offense.

trine of comity, which "teaches that one court should *defer* action on causes properly within its jurisdiction *until* the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Id.* at 518, 102 S.Ct. 1198 (quoting *Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950) (emphases added)). Staying the exhausted claims would be a traditional way to "defer" to another court "until" that court has had an opportunity to exercise its jurisdiction over a habeas petitioner's unexhausted claims.

Courts considering habeas petitions containing both exhausted and unexhausted claims after the enactment of AEDPA have disagreed as to the appropriate disposition. The Seventh Circuit has recommended that district courts stay mixed petitions. *Freeman v. Page,* 208 F.3d 572, 577 (7th Cir.2000). The Fifth Circuit has allowed district courts to dismiss mixed petitions. *Graham v. Johnson,* 168 F.3d 762, 778 (5th Cir.1999). The Ninth Circuit has recommended that district courts dismiss only the unexhausted claims of mixed petitions and stay the remaining claims. *Calderon v. United States District Court,* 134 F.3d 981, 986–88 (9th Cir.1998). We have not yet explicitly considered the issue.

■ Like the Seventh and Ninth Circuits, we think that the enactment of AEDPA warrants some adjustment in the pre-AEDPA requirement of *Rose v. Lundy* that mixed petitions be dismissed in their entirety. What the Supreme Court wanted to achieve, and what AEDPA reenforces, *see* 28 U.S.C. § 2254(b)(1)(A), is the assurance that a district court will not grant relief on unexhausted claims. That requirement of *Lundy* can be met by dismissing only the unexhausted claims. As to the exhausted claims, we think a district

court should exercise discretion either to stay further proceedings on the remaining portion of the petition or to dismiss the petition in its entirety. In many cases, a stay will be preferable, *see Duncan,* 121 S.Ct. at 2130 (Stevens, J., with whom Souter, J., joins, concurring in part and in the judgment) ("[T]here is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies."), and, as discussed below, will be the only appropriate course in cases like Zarvela's where an outright dismissal "could jeopardize the timeliness of a collateral attack." *Freeman,* 208 F.3d at 577. *See Duncan,* 121 S.Ct. at 2130 (Stevens, J., with whom Souter, J., joins, concurring in part and in the judgment) ("Indeed, there is every reason to [stay proceedings pending exhaustion] . . . when the failure to retain jurisdiction would foreclose federal review of a meritorious claim because of the lapse of AEDPA's 1–year limitations period.").

We recognize, however, that a stay, unless appropriately conditioned, could permit a habeas petitioner to take an undue amount of time to pursue state court remedies. We noted that problem in *Warren,* which concerned a habeas petitioner whose petition was dismissed without prejudice so that he could pursue new, unexhausted claims in the state courts. *Warren,* 219 F.3d at 113. After the dismissal, he failed to present his new claims to the state courts, and sought to return to the federal court to reactivate his original petition more than 20 months after its dismissal. He contended that the time between the dismissal and his request for reactivation should be tolled from the one-year limitations period. We rejected his claim, ruling that he had failed to exercise the " 'reasonable diligence' " required for equitable tolling. *Id.* (quoting *Smith,* 208 F.3d at 17).

We also rejected his claim that his refiled petition related back to the initial filing date of his dismissed petition. *Id.* at 14. Sharing a concern expressed by the Fifth Circuit, we noted that if Warren's contention were upheld, a habeas petitioner whose petition was dismissed for lack of exhaustion " 'could then wait decades to exhaust his state court remedies and could also wait decades after exhausting his state remedies before returning to federal court to "continue" his' federal remedy, without running afoul of the statute of limitations.' " *Id.* (quoting *Graham,* 168 F.3d at 780).

■ However, the concern about excessive delays in seeking exhaustion and in returning to federal court after exhaustion can easily be dispelled by allowing a habeas petitioner no more than reasonable intervals of time to present his claims to the state courts and to return to federal court after exhaustion. *Cf. Adams v. United States,* 155 F.3d 582, 584 n. 2 (2d Cir.1998) (petitioner improperly denied opportunity to file timely collateral attack afforded new opportunity "provided that he does so promptly"). Therefore, where a district court elects to dismiss only unexhausted claims and stay proceedings as to the balance of the petition, the court should condition the stay on the petitioner's initiation of exhaustion within a limited period, normally 30 days, and a return to the district court after exhaustion is completed, also within a limited period, normally 30 days.

With the time to initiate exhaustion and to return to federal court thus limited, a stay of the exhausted claims will often be preferable to a dismissal of the entire petition because such a stay will reflect the continued viability of the initially filed exhausted claims. Moreover, a stay, explicitly conditioned on the petitioner's taking action within limited intervals, alerts the petitioner to the need for expeditious exhaustion.

■ Accordingly, when a district court, confronted with a mixed petition, elects to stay the petition, it should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed.[3] If either condition of the stay is not met, the stay may later be vacated *nunc pro tunc* as of the date the stay was entered, and the petition may be dismissed (unless the time the petitioner has taken to initiate exhaustion in the state courts and to return to federal court after exhaustion has not consumed more than the portion of the one-year limitations period that remained when the habeas petition was initially filed). These two intervals will, in a sense, afford some petitioners (those with fewer than 60 days remaining on the limitations period) brief additional time, beyond the normal one-year period, to pursue state court reme-

---

3. An appropriately conditioned stay is not inconsistent with *Geraci v. Senkowski,* 211 F.3d 6 (2d Cir.2000), in which a refiled habeas petition was untimely where the petitioner waited 283 days after his conviction became final to pursue an initial state collateral challenge, 78 days after that challenge was denied to pursue a second state collateral challenge, and seven days after that challenge was denied to return to federal court. That 368–day total rendered his petition untimely by three days. *Id.* at 8–9 (alternate holding). While

the first collateral challenge was pending, an initial habeas petition had been filed and dismissed for lack of exhaustion. *Geraci v. Senkowski,* 23 F.Supp.2d 246, 251 (E.D.N.Y. 1998). The brief intervals we authorize on this appeal as conditions of a stay would not have aided Geraci because he did not return to federal court within 30 days after his first state collateral challenge was denied. Instead, 78 days later, he filed a second state collateral challenge. *See Geraci,* 211 F.3d at 9.

dies and return to federal court. We think such brief additional time is consistent with the purpose of AEDPA's limitation period, which was to make sure that a state prisoner does not take more than one year after his conviction becomes final to present his federal claim. State prisoners should have the full year allowed them by Congress to consider and prepare their federal habeas petitions, and, if it turns out that the presence of unexhausted claims and the requirements of federal law require a round trip to and from state court to accomplish exhaustion, brief intervals to meet such requirements should not be counted against that one-year period. Prompt action by the petitioner to initiate exhaustion and return to federal court after its completion serves as the functional equivalent of the "reasonable diligence" that has long been a prerequisite to equitable tolling of limitations periods. Moreover, once a stay is entered and properly conditioned, the brief intervals for the trip to and from state court technically would not add to the limitations period; the timely filed petition remains timely, regardless of what steps the district court takes in the course of adjudicating it. Furthermore, a habeas petitioner, like any civil litigant, is entitled to amend his petition, *see* 28 U.S.C. § 2242, and an amendment will "relate back" to the date of his original petition if the added claim "arose out of the conduct, transaction, or occurrence set forth" originally. Fed.R.Civ.P. 15(c)(2). *See Fama v. Commissioner of Correctional Services,* 235 F.3d 804, 814–16 (2d Cir.2000); *see also Anthony v. Cambra,* 236 F.3d 568, 576–78 (9th Cir. 2000) (permitting amended habeas claim to "relate back" to original petition where petition put defendant on notice of amended claim).

■ If a district court elects not to stay the exhausted claims and instead dismisses the entire petition, it should normally include in the dismissal order an appropriate explanation to a *pro se* petitioner of the available options and the consequences of not following required procedures. For example, the dismissal order might usefully advise the petitioner of his option to drop his unexhausted claims and resubmit a petition containing only his exhausted claims, or to exhaust his unexhausted claims in state court and then return to federal court. It would also be useful to alert the petitioner to the one-year limitations period of AEDPA and to the fact that a portion of that period has already elapsed. *See Adams,* 155 F.3d at 584 n. 2 (recommending advising certain *pro se* habeas litigants as to AEDPA limitations period). In a context less fraught with obscure procedural perils than habeas corpus, we have ruled that *pro se* litigants against whom summary judgment is sought should receive notice that they must submit opposing affidavits to preserve factual disputes for retrial and be warned of the consequence of failing to do so. *See Sawyer v. American Federation of Government Employees, AFL CIO,* 180 F.3d 31, 34 (2d Cir.1999).

■ Applying the foregoing reasoning to Zarvela's case, we conclude that his petition should have been stayed, with only the unexhausted claims dismissed. Although a district court would generally have discretion whether to stay the exhausted claims of a mixed petition or dismiss the entire petition, outright dismissal was not appropriate for Zarvela because, with so little time remaining on his statutory one-year limitations period, a complete dismissal "jeopardize[d] the timeliness of a collateral attack." *Freeman,* 208 F.3d at 577. We think he is entitled to have his petition treated as if it had been stayed, provided his entry to the state courts and

his return occurred promptly, matters we now consider.

Zarvela went promptly from federal court to state court. On June 2, 1997, Judge Raggi granted his motion to withdraw his federal habeas petition, and the state court treated his state collateral attack as filed on June 11, 1997. Had his exhausted claims been stayed in the federal court, this prompt initiation of state exhaustion of his unexhausted claims would have been well within the brief interval that would have been an appropriate condition of such a stay.

Zarvela's return to federal court after his state collateral challenge was also prompt. Once the state court collateral challenge was concluded, Zarvela waited only 14 days to hand his habeas petition to prison authorities for transmission to the District Court for refiling.[4] Judge Raggi counted eleven of these fourteen days against the AEDPA limitations period, subtracting three days for the State Court ruling to reach Zarvela by mail. In her view, this rendered his refiled petition untimely, because he had only two days of the AEDPA limitations period remaining when he originally filed in federal court. However, had a stay been entered, as we think should have occurred in this case, this prompt return to federal court (whether within eleven or fourteen days) would have occurred well within the second brief interval (for return to federal court after

exhaustion) that would have been an appropriate condition of a stay.

Because Zarvela's initially filed petition was timely when filed and should have been stayed, subject to appropriate conditions, and because his prompt trip to and from the state courts satisfied the conditions that should have been included in a stay, the initial petition may be considered on its merits.[5] Judge Raggi's contrary decision is entirely understandable, inasmuch as she could not have anticipated our decision calling for a properly conditioned stay in circumstances like those confronting Zarvela. Moreover, she accorded him the relief he sought (withdrawal of his petition). His predicament was created by his failure to alert the District Court that a properly conditioned stay would have been the preferable response to his filing of a mixed petition. Under the circumstances, especially as the implementation of AEDPA's limitation requirements is being developed, we do not think this *pro se* litigant should lose his opportunity to present his constitutional challenge to his conviction because he requested the wrong form of procedural relief.

## Conclusion

We reverse the dismissal of Zarvela's refiled petition and remand for further proceedings.[6]

4. Zarvela's refiled petition, sought to be renewed after his initially filed petition had been dismissed without prejudice to permit exhaustion, was properly not considered a "second or successive petition" within the meaning of 28 U.S.C. § 2244(b)(2). *See Slack v. McDaniel,* 529 U.S. 473, 485–87, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); *Warren,* 219 F.3d at 113 n. 1.

5. The claims presented in that initial petition (and renewed in the refiled petition) are prop-

erly before the District Court because that initial petition should have been stayed. Whether the new claim presented in the refiled petition is entitled to be considered to "relate back" to the timely claims in the initial petition is a matter for consideration by the District Court.

6. In view of our disposition, we need not consider (1) Zarvela's claims that circumstances during his prison confinement warrant equitable tolling, (2) Judge Raggi's deci-

sion to extend the one-year limitations period by three days because he was notified by mail of the state court's denial of his collateral challenge, or (3) the significance, if any, of the lack of a separate judgment reflecting Judge Raggi's ruling granting Zarvela's motion to withdraw his initially filed petition.