Luis JIMENEZ, Petitioner,

v.

Hans WALKER, Superintendent,
Auburn Correctional Facility,
Respondent.

No. 99–CV–2573 (ADS).

United States District Court,
E.D. New York.

Oct. 13, 2001.

Joel A. Brenner, East Northport, New York, for the petitioner.

Richard A. Brown, District Attorney, Queens County, Kew Gardens, New York, by Lisa Drury, Asst. District Attorney, for the respondent.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Luis Jimenez ("Jimenez" or the "petitioner") by petition dated June 19, 2000, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Presently before the Court is a motion by the respondent to dismiss the petition as untimely.

### I. BACKGROUND

The evidence introduced at trial established that on October 4, 1993 at approximately 9:45 p.m., the petitioner and an armed accomplice drove a van to 136–04 Cherry Avenue in Queens County, where the accomplice fired numerous gunshots at Juan Barrera, killing Elkin Cardona. On December 7, 1994, petitioner was convicted after a jury trial in the Supreme Court of the State of New York, Queens County, of Murder in the Second Degree (Penal Law § 125.25(1)), Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02(4)), Criminal Facilitation in the Second Degree (Penal Law § 115.05), and Reckless Endangerment in the First Degree (Penal Law § 120.25). The petitioner was sentenced to concurrent indeterminate terms of imprisonment of from twenty years to life for the murder, from five to fifteen years for the second degree weapon possession, from four to twelve years from the criminal facilitation, and from two to six years for the reckless endangerment.

October 16, 1996, the petitioner's appellate counsel perfected his appeal to the Appellate Division, Second Department by filing a brief in that court. Counsel raised the following issues in his appellate brief: (a) the People's evidence was legally insufficient to establish, beyond a reasonable

doubt, that the petitioner or an accomplice caused the death of the deceased; (b) the petitioner was denied his rights to a fair trial, to present a defense, and to confront the witnesses against him when: (1) the People belatedly disclosed *Brady* material which indicated that the deceased was killed by a weapon different from the one fired from the van; (2) the trial court prevented the petitioner from recalling the only eyewitness; (3) and the trial court precluded the petitioner from eliciting testimony that a five-ounce package of heroin was found on the deceased; and (c) the petitioner's sentence was excessive.

On January 31, 1997, the People of the State of New York filed their appellate brief in opposition to the petitioner's claims.

On March 25, 1997, the petitioner filed a *pro se* supplemental brief, arguing that: (a) the trial court erred in charging the jury by instructing them on the crimes of intentional murder and depraved indifference murder cumulatively rather than alternatively and charging the jury on depraved indifference murder; (b) the trial court improperly shifted the burden of proof on the issue of intent, when it failed to define the element of intent in its charge to the jury; and (c) the People failed to establish that the petitioner acted in concert with his accomplice to commit the murder.

On April 18, 1997, the People filed a supplemental brief in opposition to petitioner's pro se claims.

In a decision dated October 27, 1997, the Appellate Division, Second Department, unanimously affirmed the petitioner's judgment of conviction. *People v. Jimenez*, 245 A.D.2d 304, 670 N.Y.S.2d 118 (1997). In its decision and order, the Appellate Division rejected the petitioner's contentions that the evidence was legally insufficient to establish his guilt beyond a reasonable doubt and that the verdict was

against the weight of the evidence. The court also specifically held that the People's delay in disclosing *Brady* material did not warrant a reversal of the petitioner's conviction, because the petitioner had been given a meaningful opportunity to use the allegedly exculpatory material. The Appellate Division also determined that the petitioner's sentence was not excessive. Finally, the court held that the petitioner's remaining contentions, including those in his supplemental *pro se* supplemental brief, were either unpreserved for appellate review or without merit.

The petitioner sought leave to appeal the Appellate Division's decision to the New York Court of Appeals. In his application, the petitioner specifically asked the Court to review his claim that the trial evidence was insufficient to establish his guilt beyond a reasonable doubt, and that the People's delayed disclosure of alleged *Brady* material denied him a meaningful opportunity to utilize that evidence. On February 5, 1998, the People filed a response, opposing the petitioner's application for leave to appeal. On February 12, 1998, the petitioner filed a *pro se* supplement to his appellate counsel's leave application, requesting that the Court grant him leave to appeal the issues regarding the jury charge. On February 27, 1998, Judge Vito J. Titone denied the petitioner's leave application. *People v. Jimenez*, 91 N.Y.2d 927, 670 N.Y.S.2d 408, 693 N.E.2d 755 (1998). The petitioner did not seek a writ of certiorari to the United States Supreme Court.

On May 5, 1999, the petitioner filed an application for a writ of habeas corpus in this Court. In his application, the petitioner claimed that: (a) the verdict was not supported by legally sufficient evidence, because the People failed to introduce evidence showing that the bullet responsible for the victim's death was connected to

him or his accomplice and failed to introduce evidence showing that the petitioner knew his accomplice had a weapon or intended to shoot the victim; (b) he was denied his right to a fair trial when (1) the prosecution belatedly disclosed that the victim had been killed by a bullet that had been fired from a weapon other than the one fired from the van, (2) the court refused to permit the petitioner to recall the eyewitness for further cross-examination regarding this matter, and (3) the court refused to allow the petitioner to elicit evidence that the victim was in possession of five ounces of heroin at the time of his death; (c) the petitioner received ineffective assistance of counsel at the trial and appellate levels; and (d) the petitioner's sentence was illegal and constitutes a penalty for his decision to proceed to trial in lieu of accepting a guilty plea.

On May 19, 1999, the petitioner filed a motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") section 440.10 in the Queens County Supreme Court. The petitioner asserted that his trial counsel was ineffective because he: (a) failed to object to the court's comments during voir dire regarding the petitioner's right not to testify, the prosecutor's statement that the petitioner might be too afraid to testify, and the court's final charge to the jury regarding the petitioner's right not to testify; (b) failed to object to inadmissible and prejudicial testimony; (c) failed to strike evidence of a "chicken foot" that was found at the crime scene; and (d) failed to object to the court's failure to instruct the jury on character evidence.

On June 29, 1999, the People filed an affirmation in opposition to the petitioner's CPL § 440.10 motion, arguing that the petitioner's motion was subject to a mandatory procedural bar because the ineffective-assistance-of-counsel claims were on-the-record claims that should have been raised on direct appeal.

On August 12, 1999, counsel for the petitioner filed a letter application in this Court informing the Court that he had filed the CPL § 440 motion in Supreme Court, Queens County, and requesting, therefore, that his habeas petition (1) be held in abeyance until the state post-conviction proceedings had concluded, or (2) be dismissed without prejudice and with leave to renew at the conclusion of the state post-conviction proceedings. On August 16, 1999, this Court dismissed the petition without prejudice and with leave to renew upon the conclusion of the petitioner's state post-conviction remedies.

On September 15, 1999, the Supreme Court, Queens County, denied the petitioner's motion to vacate his judgment of conviction pursuant to CPL § 440.10 on the ground that the petitioner's claims were procedurally barred and meritless.

On November 23, 1999, the petitioner filed an application in the Appellate Division, Second Department, requesting leave to appeal the denial of his motion to vacate his judgment of conviction. The People filed opposition papers and on February 14, 2000, the Second Department denied the petitioner's request for leave to appeal.

Two weeks later, on February 28, 2000, the petitioner filed an application for a writ of error *coram nobis* in the Appellate Division, Second Department. In that application, the petitioner claimed that he received the ineffective assistance of appellate counsel due to his attorney's alleged failure to argue that the petitioner received the ineffective assistance of trial counsel. The People filed an affirmation and memorandum of law in opposition. On June 12, 2000, the Appellate Division, Second Department, denied petitioner's application for a writ of error *coram nobis*.

*See People v. Jimenez,* 273 A.D.2d 322, 710 N.Y.S.2d 530 (2d Dept.2000).

On June 19, 2000, the petitioner submitted to this Court the current petition for a writ of habeas corpus. On the same day, the petitioner submitted a letter to the Court requesting an extension of time in which to file his memorandum of law in support of the petition. On June 25, 2000, the Court granted the petitioner's request. Thereafter, on August 18, 2000, the petitioner timely filed his memorandum of law, in which he raises the following arguments: (a) his conviction is not supported by sufficient evidence and, in any event, is against the weight of the credible evidence; (b) he was depriving his constitutional rights to confrontation and cross-examination when the court admitted hearsay evidence; (c) he was deprived of his constitutional right to present a defense when the court denied his request to introduce evidence demonstrating that the victim was carrying five ounces of heroin at the time of his death; (d) he was deprived of his constitutional rights to cross-examine witnesses against him and to present a defense when the court denied his request to recall the eyewitness for further cross-examination; (e) the court's instructions and the prosecutor's comments deprived him of his right to remain silent; (f) he was deprived of his right to a fair trial by the court's erroneous admission of evidence found at the crime scene and its failure to instruct the jury regarding his character evidence; and (g) he was deprived of his right to the effective assistance of trial and appellate counsel.

On October 24, 2000, this Court issued an Order to Show Cause, directing the respondent to submit a response to the petitioner's application within sixty days of the date of the order. Thereafter, the respondent requested an extension of time, to February 26, 2001, to file its response.

On January 8, 2001, the petitioner, through his attorney, submitted a letter to this Court requesting that the respondent be precluded from filing a response to the petition on the ground that respondent had not complied with this Court's scheduling order. After a telephone conference, the petitioner submitted another letter to this court, on January 17, 2001, withdrawing his January 8, 2001 letter requesting that respondent be precluded from filing a return, and indicating that he consented to an extension of time, to February 16, 2001, for the respondent to file their opposition.

On February 13, 2001, the respondent filed a notice of motion to dismiss the habeas corpus petition on the ground that the petition is time barred. Among other things, the respondent asserts that the one-year limitations period was not tolled by the filing of the petitioner's original habeas petition on May 5, 1999.

On February 22, 2001, the petitioner filed papers in opposition to the respondent's motion to dismiss. The petitioner argues that the Court should deny the motion to dismiss the habeas petition because (1) the motion is untimely; (2) it is simply an attempt to "buy … more time" to respond to the merits of the petition; (3) it is without merit; and (4) even if the Court finds that the petition was untimely, the Court should not dismiss the petition because any failure to comply with the one-year statute of limitations was excusable because it was due to counsel's misunderstanding of the filing deadlines.

## II. *DISCUSSION*

This petition is brought pursuant to 28 U.S.C. § 2254, and was filed on June 19, 2000, after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, the provisions of the AEDPA apply to the petitioner's case. *Williams v. Tay-*

*lor,* 529 U.S. 420, 429, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).

■ The AEDPA requires a petitioner to file a habeas corpus petition within one year of the date his judgment of conviction becomes final. *See* 28 U.S.C. § 2244(d)(1)(A). For the purposes of the AEDPA, a petitioner's conviction becomes final when his time to seek review in the United States Supreme Court by writ of certiorari expires, which is 90 days after the date direct review of the case has been completed by the highest court in the relevant state. *See Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir.1998). The New York Court of Appeals denied the petitioner's request for leave to appeal the Appellate Division's decision on February 5, 1998. Thus, Jimenez's conviction became final 90 days later, on May 28, 1998. *See Ross,* 150 F.3d at 98. Jimenez had one year from that date to file a timely habeas corpus petition in federal court.

The one-year statute of limitations period provided for by the AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C § 2244(d)(2). The Supreme Court recently held that the phrase "State post-conviction or other collateral review" does not include federal habeas corpus petitions, and thus, the one-year limitations period is not tolled by the filing of a federal habeas petition. *See Duncan v. Walker,* 531 U.S. 991, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). Notably, the Second Circuit has ruled that under appropriate circumstances, the one-year period is subject to equitable tolling. *See Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000).

■ Applying these rules to the facts of this case, the Court finds that Jimenez's petition is time-barred. Jimenez filed the current habeas corpus petition on June 19, 2000, more than two years after his convic-

tion became final. Whether the petition is time-barred depends upon how much of that two year period is exempt from the one-year limitations period. According to the recent Supreme Court decision, Jimenez's original habeas petition, filed on May 5, 1999 did not toll the statute of limitations. *See Duncan,* 531 U.S. 991, 121 S.Ct. at 2129. Thus, the one-year limitations period ran from May 28, 1998 until Jimenez filed his CPL § 440.10 motion in state court 356 days later on May 19, 1999. *See* 28 U.S.C. § 2244(d)(1)(A).

Thereafter, the limitations period was tolled from May 19, 1999 through February 14, 2000, the date on which the Appellate Division, Second Department, affirmed the denial of the petitioner's CPL § 440 .10 motion. *See Bennett v. Artuz,* 199 F.3d 116, 119–20 (2d Cir.1999) (declining "to hold that a post-conviction petition is not pending before state courts during the intervals between disposition and appeal" on the ground that this holding "would force appellants into federal court prematurely, before 'giv[ing] ... state courts [a] full opportunity to resolve any constitutional issues.' "); *see also Hizbullahankhamon v. Walker,* 255 F.3d 65, 72 (2d Cir.2001) (characterizing *Bennett,* 199 F.3d 116 as having held "that an application for post-conviction review is pending from the time it is filed, during the intervals between disposition and appeal, and until further appellate review is unavailable"). *But see Robinson v. Ricks,* 2001 WL 1078356 *6 (E.D.N.Y. Sept.7, 2001) (distinguishing *Bennett* and holding that the limitations period was not tolled during the interval between the denial of his CPL § 440.10 motion and his application for leave to appeal that denial).

The limitations clock began running again on February 15, 2000, when a state post-conviction application was no longer pending. The limitations clock continued to run for the next 13 days, until February

28, 2000, the date on which Jimenez filed his petition for a writ of error coram nobis. The one-year statute of limitations was tolled again from February 28, 2000 through June 12, 2000, when the petitioner's coram nobis application was pending in the Appellate Division. The clock started again on June 13, 2000 and ran for the next six days until June 19, 2000, the date the petitioner refiled his habeas corpus petition. When these nineteen days are added to the 356–day total, the one-year AEDPA statute of limitations is exceeded by ten days, and Jimenez's petition is thus time-barred.

The Court notes that in August 1999, Jimenez presented it with a choice: dismiss the petition with leave to refile, or stay the proceedings while the petitioner exhausted his state-court remedies. The Court dismissed the petition with leave to refile. Had the Court stayed the proceedings instead, Jimenez's petition would not be time-barred, because it was filed on May 5, 1999, twenty-three days before the expiration of the limitations period.

Since the Supreme Court's decision in *Duncan,* the Second Circuit has stated that when a district court is presented with a petition containing exhausted and unexhausted claims, the district court should dismiss only the unexhausted claims and stay further proceedings on the remaining portion of the petition where, as here, "outright dismissal could jeopardize the timeliness of a collateral attack." *Zarvela v. Artuz,* 254 F.3d 374, 379 (2d Cir.2001). To avoid the problems associated with excessive delays in seeking exhaustion, the Second Circuit suggested "condition[ing] the stay on the petitioner's initiation of exhaustion within a limited period, normally 30 days, and a return to the district court after exhaustion is completed, also within a limited period, normally 30 days." *Id.* at 381. If the district court chooses to dismiss the entire peti-

tion, the Second Circuit recommends including in the dismissal order "an appropriate explanation to the *pro se* petitioner of the available options and the consequences of not following required procedures." *Id.* at 382; *see Thomas v. Morgenthau,* 2001 WL 845445 *2 (S.D.N.Y. July 25, 2001) (dismissing entire petition upon the request of the petitioner but advising the petitioner that the one-year limitations period will not commence anew, the clock will stop upon the filing of a coram nobis petition but will run again when that petition is decided, he has the option of continuing with his exhausted claims).

In light of *Duncan* and *Zarvela,* several courts in this Circuit have dismissed the unexhausted portions of habeas petitions and stayed the proceedings with regard to the exhausted claims provided that the petitioner presents the unexhausted claims to the state court within certain time limits. *See Parker v. Johnson,* 2001 WL 1029418 *3 (S.D.N.Y. Sept.7, 2001); *Santana v. Artuz,* 2001 WL 823863 *2 (S.D.N.Y. July 20, 2001); *see also Baity v. Mazzuca,* 2001 WL 897174 *1 (S.D.N.Y. Aug.9, 2001) (stating that when a court is confronted with a "mixed petition," the "practice" is to dismiss only the unexhausted claims and stay further proceedings on the exhausted claims).

▉▉▉ As mentioned above, the Court may equitably toll the one-year limitations period upon a petitioner's showing that extraordinary or unusual circumstances prevented him from filing his petition on time. *See Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000). To make this showing, the petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." *Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000). Furthermore, to succeed, the petitioner must have "exercised reasonable diligence in attempting to file

after the extraordinary circumstances began." *Id.*

■ The Court finds that extraordinary circumstances exist here that warrant an equitable tolling of the statute of limitations. The extraordinary circumstances that render the petition time-barred are the combined effects of this Court's dismissal of the petition and the subsequent and unforeseeable Supreme Court decision in *Duncan.* The petitioner based his request for a dismissal without prejudice on the law in effect in August 1999. Neither he nor the Court was aware that almost two years later, the Supreme Court would issue its decision in *Duncan,* rendering Jimenez's petition untimely simply because the Court granted the petitioner's request to dismiss the petition without prejudice in lieu of a stay.

Indeed, had this Court or the petitioner been aware the effect the dismissal would have had, a different course would have been charted. The petitioner may have requested a stay of the exhausted claims or may have chosen not to proceed with the unexhausted claims. In addition, it would have been well within the Court's discretion to grant the petitioner's request for a stay of the exhausted claims pending timely resolution of the unexhausted claims. *See Duncan,* — U.S. ——, 121 S.Ct. 2120, 150 L.Ed.2d 251, *Zarvela,* 254 F.3d 374, *Parker,* 2001 WL 1029418, and *Santana,* 2001 WL 823863. Thus, the fact that *Duncan* transformed the dismissal of the petition without prejudice into a dismissal with prejudice by rendering the petition time-barred presents extraordinary circumstances that warrant equitable tolling of the AEDPA statute of limitations.

■ Further, the petitioner clearly demonstrated reasonable diligence in pursuing his unexhausted claims. In fact, he filed his state post-conviction motion three months before he asked this Court to stay

or dismiss the petition without prejudice. In addition, only two weeks elapsed between decision of the Appellate Division, Second Department, denying the petitioner's application for leave to appeal the denial of his CPL § 440.10 motion and the filing of petitioner's coram nobis application. In addition, only six days elapsed between the denial of the coram nobis application and the filing of the habeas petition in this Court. The petitioner pursued his state-court remedies efficiently and responsibly, and his conduct meets the "reasonable diligence" standard set forth in *Valverde,* 224 F.3d at 131.

Given the extraordinary circumstances presented by this case and the speed with which the petitioner pursued his state-court remedies, the Court finds that the petitioner is entitled to 14 days of equitable tolling, which represents the time period between the filing of his original habeas petition on May 5, 1999 and the filing of his CPL § 440.10 motion on May 19, 1999. In reaching this conclusion, the Court notes that its holding is limited to the particular circumstances presented by this case, in that the petitioner specifically requested that Court either to stay the habeas proceeding or grant a dismissal without prejudice, and the Court dismissed the petition without prejudice. The Court further notes that the petitioner had already began pursuing his state-court remedies three months before he asked the Court for a stay or, alternatively a dismissal without prejudice and concluded those state-court proceedings quickly and efficiently.

### III. *CONCLUSION*

Having reviewed the submissions of the parties, and based on the foregoing, it is hereby

**ORDERED,** that the respondent's motion to dismiss the petition as time barred is **DENIED;** and it is further

773

ORDERED, that the respondent is directed to file its response to the petition within 60 days of the date of this order, together with copies of the trial transcript, the briefs on appeal, the leave application, the CPL § 440.10 motion and opposition, and the coram nobis application and opposition; and it is further

ORDERED, that the petitioner is directed to file his reply or traverse within 30 days of receipt of the respondent's opposition papers.

SO ORDERED.