Lloyd **LINDO**, Petitioner,

v.

**E.S. LEFEVER, Superintendent, Franklin Correctional Facility, Respondent.**

**No. 98–CV–6232(ADS).**

United States District Court, E.D. New York.

March 28, 2002.

Lloyd Lindo, Staten Island, NY, Petitioner pro se.

Denis Dillon, District Attorney of Nassau County, by Tammy J. Smiley and Daniel T. Butler, Asst. District Attorneys, Mineola, NY, Attorneys for Respondent.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Lloyd Lindo (the "Petitioner"), by petition dated October 6, 1998, seeks a writ of *habeas corpus* from his 1980 conviction in County Court, Nassau County, for Murder in the Second Degree (N.Y. Penal Law § 125.25(1)).

During the summer of 1978, the victim's brother, Goldston Williams, allegedly stole three pounds of marijuana and money from the Petitioner and Peter George Johnson. Sometime later, the Petitioner, Johnson and the victim were driving together on Northern State Parkway. The group stopped along the side of the parkway to urinate in the bushes. The Petitioner followed the victim into the brush, then shot him in the chest.

On August 13, 1980, after a bench trial in County Court, Nassau County (Clyne, J.), the Petitioner was convicted of Murder in the Second Degree and sentenced to a term of twenty-five years to life.

In June 1982, the Petitioner moved to vacate the judgment of conviction, pursuant to N.Y.Crim. Proc. § 440.10(h), alleging that he suffered from a mental disease or defect which rendered him incapable of understanding the trial proceedings. In August 1982, the County Court (Santagata, J.) denied his motion. In an order dated May 6, 1983, the Appellate Division, Second Department, denied leave to appeal.

In June 1983, the Petitioner directly appealed his conviction to the Appellate Division, Second Department, alleging: (1) that Peter Johnson's testimony was accomplice testimony pursuant to N.Y. C.P.L. § 60.22; (2) that Peter Johnson's testimony was not sufficiently corroborated by independent evidence connecting the Petitioner to the crime; (3) that the trial court erred in convicting the Petitioner based on the evidence; and (4) that the Petitioner's post-trial motion, alleging mental defect, should have been granted.

On October 9, 1984, the Appellate Division affirmed the Petitioner's conviction and dismissed the appeal from his post-judgment motion because the court had previously denied leave to appeal that motion. *See People v. Lindo,* 104 A.D.2d 902, 480 N.Y.S.2d 304 (2d Dept.1984). On December 28, 1984, the Court of Appeals denied leave to appeal. *See People v. Lindo,* 64 N.Y.2d 761, 485 N.Y.S.2d 1047, 475 N.E.2d 464 (1984).

On October 28, 1986, the Petitioner again moved to vacate his judgment of conviction pursuant to N.Y.Crim. Proc. § 440.10(h), this time alleging that he did not receive a fair trial because the court was biased, and that his appellate counsel was ineffective for failing to raise certain issues on appeal. On January 12, 1987, the County Court, Nassau County (Mackston, J.), denied the motion. On May 14, 1987, the Appellate Division, Second Department, denied leave to appeal.

On November 19, 1987, the Petitioner filed his third post-judgment motion under N.Y.Crim. Proc. § 440.10(h), arguing that his trial counsel was ineffective because counsel allegedly failed to meet with the Petitioner in the year before trial, and he erroneously advised the Petitioner to waive a jury trial; and that the Petitioner's waiver of a jury trial was invalid because he suffered from a mental defect at the time in question. On March 4, 1988, the County Court, Nassau County (Orenstein, J.), denied the motion. On Septem-

ber 19, 1990, the Appellate Division, Second Department, denied leave to appeal.

On February 19, 1991, the Petitioner filed his first application for a writ of *habeas corpus* with this Court. He claimed that the state court erred in denying his 1982 postjudgment motion because witness Peter Johnson was an accomplice, and as such the court erred in not requiring that his testimony be corroborated. On June 20, 1991, the Petitioner requested that the Court dismiss his application without prejudice, because he had not fully exhausted state remedies. In October 1991, this Court dismissed the Petitioner's application without prejudice.

On May 1, 1992, the Petitioner filed his fourth post-judgment motion pursuant to N.Y.Crim. Proc. § 440.10(h), again alleging that he was denied effective assistance of trial counsel for failing to properly advise him regarding the jury trial waiver, and that his waiver of a jury was invalid because he suffered from a mental defect. On August 25, 1992, the County Court, Nassau County (Orenstein, J.), denied the motion. On October 21, 1992, the Appellate Division, Second Department, denied leave to appeal.

On February 4, 1994, the Petitioner filed a second *habeas corpus* petition with this Court, alleging ineffective assistance of trial counsel. Specifically, the Petitioner claimed that counsel failed to advise him of his right to challenge the indictment; that counsel failed to adequately prepare for trial by not thoroughly investigating the facts or law of the case; that counsel did not sufficiently inform the Petitioner what privileges he jeopardized by waiving a jury trial; and that counsel should have known that the Petitioner was suffering from a mental defect and did not make a knowing or intelligent waiver of a jury trial.

By decision dated March 22, 1996, this Court found that the Petitioner had not exhausted the state court remedies for his first ground of ineffective assistance of counsel. In accordance with the law at the time, the Court dismissed the entire petition.

In August 1997, the Petitioner filed his fifth motion to vacate the judgment in state court, alleging that trial counsel did not advise him of his right to appear before the Grand Jury prior to indictment pursuant to N.Y.Crim.Proc. Law § 190.50. On October 9, 1997, the County Court, Nassau County (Jonas, J.), denied the Petitioner's motion on procedural grounds, finding that he could have raised this issue in his previous motions, and he did not comply with other procedural requirements. On January 27, 1998, the Appellate Division, Second Department, denied leave to appeal.

On October 6, 1998, the Petitioner filed this proceeding for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254. Petitioner argues that his trial counsel was ineffective because: first, he failed to advise the Petitioner of his right to challenge the indictment before pre-trial proceedings; second, he failed to adequately investigate the facts and law applicable to the Petitioner's case; third, he failed to advise the Petitioner about the privileges jeopardized by waiving a jury trial; and finally, counsel should not have advised the Petitioner to waive a jury trial where the Petitioner had an obvious mental condition.

### DISCUSSION

■ The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes that a petitioner must file his application for writ of *habeas corpus* within one year of his conviction becoming final—that is, at the conclusion of direct review. *See* 28 U.S.C. § 2244(d)(1)(a); *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir.2001); *Wims v. U.S.*, 225 F.3d 186, 189 (2d Cir.2000). When a petitioner's convic-

tion became final prior to the April 24, 1996 effective date of the AEDPA, the petitioner has one year from the effective date of the Act to commence a *habeas* action. *See Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir.2000); *Ross v. Artuz*, 150 F.3d 97, 102 (2d Cir.1998). The Petitioner's conviction became final in December 1984, when the Court of Appeals denied leave to appeal. Accordingly, this action is subject to the AEDPA's April 1997 statute of limitations. *See Williams v. Taylor*, 529 U.S. 420, 429, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).

■ Applying these principles, the Court concludes that Petitioner failed to timely file his *habeas corpus* petition. Because Petitioner's conviction became final before the AEDPA, he had until April 24, 1997, to file a petition for writ of *habeas corpus*. At the time his AEDPA year began to run on April 24, 1996, the Petitioner had no pending collateral proceedings, and thus, his time under the AEDPA began running and continued without interruption until May 1997. The instant petition, filed October 6, 1998, is therefore untimely.

■ Although the petition was not filed within AEDPA's one-year period, it could still be timely if the Petitioner is eligible for equitable tolling. The Court may "equitably toll" the statute of limitations when "extraordinary circumstances" prevent a prisoner from timely filing a *habeas* petition. *See Warren*, 219 F.3d at 113. Transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances. *See Asencio v. Senkowski*, 2000 WL 1760908 at *2 n. 4 (S.D.N.Y. Nov.30, 2000) (holding solitary confinement does not qualify as extraordinary circumstance), *citing Hizbullahankhamon v. Walker*, 105 F.Supp.2d 339, 344 (S.D.N.Y.2000); *Montalvo v. Strack*, 2000

WL 718439 at *2 (S.D.N.Y. June 5, 2000) (holding transfers between prison facilities do not merit equitable tolling); *Martinez v. Kuhlmann*, 1999 WL 1565177 at *5 (S.D.N.Y. Dec.3, 1999) (noting various circumstances not eligible for equitable tolling, including lack of English language proficiency and lack of aid in research).

■ The Petitioner argues that he did not become aware that the Court dismissed his previous *habeas corpus* petition until May 26, 1997, due to a correctional facility transfer. However, even if the Court found that this lack of knowledge constituted extraordinary circumstances which prevented the Petitioner from timely filing his current petition, the Petitioner does not qualify for tolling because he failed to act diligently once he received the decision.

■ Tolling is not automatic upon a showing of extraordinary circumstances. "[T]he party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." *Smith*, 208 F.3d at 17. To make this showing, the Petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir.2000).

Upon receiving the decision on May 26, 1997, the Petitioner waited until July 1997, before filing his next state court motion. After the state court decision became final on January 27, 1998, he waited approximately nine months before filing the instant *habeas* petition on October 6, 1998. Accordingly, the Court finds that the Petitioner did not act with the reasonable diligence necessary to receive equitable tolling. *Cf. Jimenez v. Walker*, 166 F.Supp.2d 765, 772 (E.D.N.Y.2001) (finding the Petitioner acted with reasonable diligence where he pursued his state court

remedies within two weeks after the Court dismissed his petition, and filed his second *habeas* petition six days after the state court denied his post-judgment motions).

Here, the Petitioner presented no explanation for his lengthy delays between filings. Notably, the claims alleged in the instant petition are identical to those raised in his second habeas petition. Similarly, because the claims in the Petitioner's current petition had been investigated and prepared for his 1997 state court motion, it is not clear why Petitioner waited almost nine months after dismissal of that motion to file the instant petition. Because the Petitioner did not act reasonably diligently in pursuing his claims, he is not entitled to equitable tolling.

Although not specifically argued by the Petitioner, the Court also notes that the Petitioner's application would not be timely even if the Court had stayed the exhausted claims in his second petition in accordance with *Zarvela v. Artuz*, 254 F.3d 374 (2d Cir.2001). In *Zarvela*, the Second Circuit held that when faced with a mixed petition, containing both exhausted and unexhausted claims, the District Court may dismiss the unexhausted claims and stay the exhausted claims until exhaustion is completed. Here, if the Court chose to stay Petitioner's 1994 petition, he would have had to return to the state court for exhaustion within thirty days. *See id.* at 381. Additionally, after the state court's decision became final, the Petitioner would have had to return to this Court within thirty days. *See id.* The Petitioner did not comply with either of these requirements. The Petitioner waited almost three months after he received the Court's decision in May 1997 before returning to state court in July 1997. He then waited approximately nine months after the state court decision became final on January 27, 1998, before returning to this Court in October 1998. Thus, his petition would be untimely regardless of how this Court treated his 1994 *habeas* petition.

### *CONCLUSION*

For the foregoing reasons, the petition for a writ of *habeas corpus* is DENIED.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**