**Pedro PACHECO, Petitioner,**

v.

**Christopher ARTUZ, Superintendent Green Haven Correctional Facility Respondent.**

**No. 97CIV.5954 (WHP)(RLE).**

United States District Court, S.D. New York.

March 7, 2002.

Pedro Pacheco, pro se, Stormville, NY, Flora Edwards, New York City, for Petitioner.

## OPINION AND ORDER

ELLIS, United States Magistrate Judge.

Petitioner Pedro Pacheco ("Pacheco") has moved to stay his amended petition for habeas corpus filed on May 24, 2000. Pacheco argues that a stay is necessary to preserve the timeliness of his exhausted claims while he exhausts the unexhausted claims in state court. Respondent opposes the motion for a stay on the following grounds: (1) there is no legally cognizable issue appropriate for habeas corpus review, and (2) the underlying claim is time barred, notwithstanding a stay. Based on the following, petitioner's motion is **GRANTED**.

## I. BACKGROUND

On July 25, 1987, Julio Lopez was shot and killed while walking down a Bronx street with two friends, Jose de Jesus and Adrian Caban. Amended Petition ("Amd. Pet.") at 3. Pacheco was charged with the crime. On September 27, 1989, he was convicted by a jury in Supreme Court, Bronx County, on one count of murder in the first degree for Lopez's death. Affirmation in Support of Motion to Stay Petition in Order to Permit Exhaustion of State Remedies ("Pet.Aff.") at ¶ 3. On November 20, 1989, Pacheco was sentenced to an indeterminate term of imprisonment of twenty years to life. *Id.* He filed a notice of appeal to the Appellate Division, First Department, on November 21, 1989. Amd. Pet. at 2. On April 8, 1993, his conviction was affirmed. *People v. Pacheco*, 192 A.D.2d 362, 595 N.Y.S.2d 780 (N.Y.App.Div.1993). On April 15, 1993, Pacheco sought leave to appeal from the New York Court of Appeals. Amd. Pet. at 2. The application was denied on June 8, 1993. *Id.*

On May 16, 1997, Pacheco filed a *pro se* petition for habeas corpus pursuant to 28 U.S.C. § 2254, asserting the following three grounds: (1) his conviction was not sustained by legally sufficient evidence; (2) he was denied his due process right to a fair trial when the judge admitted evi-

dence of the decedent's drug dealing; and (3) his sentence was excessive. Pet. Aff. at ¶ 4. The petition was dismissed by District Judge Griesa on December 2, 1997, as time barred under 28 U.S.C. § 2244(d). *Id.* at ¶ 5. On September 22, 1998, the Second Circuit vacated Judge Griesa's decision in light of its then-recent decision in *Ross v. Artuz,* 150 F.3d 97 (2d Cir.1998), and remanded the matter for a determination of whether petitioner had timely filed his petition with prison officials. *Id.* at ¶ 6. By Order dated March 8, 1999, the matter was reopened. *Id.* at ¶ 7.

On February 22, 2000, Flora Edwards ("Edwards") entered her appearance as Pacheco's counsel, and by Order dated March 10, 2000, was granted permission to file an amended petition. *Id.* at ¶ 8. On May 24, 2000, Pacheco filed an amended petition asserting a due process claim of actual innocence based on newly discovered evidence. *Id.* at ¶ 9; Amd. Pet. at 13. At the crux of the claim is an assertion that one of the prosecution's main witnesses, Adrian Caban ("Caban"), perjured himself when he identified Pacheco as the shooter. Amd. Pet. at 10. In support of the amended petition, Pacheco submits an affidavit by Caban stating that he is now willing to recant his previous statements and testify that Pacheco was not the shooter. *Id.* at Exh. S (Affidavit of Adrian Caban). The amended petition includes, *inter alia,* requests for a vacatur of Pacheco's conviction and sentence in light of the newly discovered evidence and the grounds set forth in his initial petition, and an evidentiary hearing to offer proof in support of the petition. Amd. Pet. at 23. The amended petition also requests, in the alternative, that the Court dismiss the petition without prejudice to allow Pacheco to exhaust his state remedies. *Id.*

On September 4, 2001, Pacheco filed a "Motion to Stay the Petition in Order to Permit Exhaustion of State Remedies."

Acknowledging that the amended petition is a mixed petition containing both exhausted and unexhausted federal claims, Pacheco filed the motion to stay, rather than dismiss the petition, in accordance with the Supreme Court's decision in *Duncan v. Walker,* 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), and the Second Circuit's decision in *Zarvela v. Artuz,* 254 F.3d 374 (2d Cir.2001). Memorandum of Law in Support of Petitioner's Motion to Stay Petition Pending Exhaustion of State Remedies ("Pet.Mem."). The Bronx County District Attorney's Office filed an affidavit in opposition to the motion on January 29, 2002, arguing that the stay should be denied in the interests of judicial economy because the "newly discovered evidence" claim does not present an issue cognizable upon habeas corpus review, and is also time-barred. Affidavit in Opposition ("Aff.Opp.") at 1.

### III. ANALYSIS

#### A. Substantive Exhaustion

Under 28 U.S.C. § 2254(b), amended in 1996 by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Title I, § 106(b), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), a federal court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A). The exhaustion doctrine requires a habeas petitioner challenging a state conviction on federal grounds to have presented his or her claims to the state courts first. *See Daye v. Attorney Gen. of N.Y.,* 696 F.2d 186, 191 (2d Cir.1982) (*in banc*), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). In doing so, petitioners are not obligated to cite "book and verse on the federal constitution," *Picard,* 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (*quoting Daugharty v. Gladden,* 257 F.2d

750, 758 (9th Cir.1958)), but they must provide adequate notice to the state courts that they are to decide federal constitutional claims. Such notice includes:

(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye,* 696 F.2d at 194; *see also, Gray v. Netherland,* 518 U.S. 152, 153, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997).

■ Contrary to the respondent's argument that the petition "does not present an issue cognizable upon habeas corpus review," Aff. Opp. at 1, assertions of perjury and recantation present serious questions appropriate for a court with habeas jurisdiction to examine. "[T]he use of perjured testimony violates the due process clause when the court has 'a firm belief that but for [that] testimony, the defendant would most likely not have been convicted.' " *Sanders v. Sullivan,* 900 F.2d 601, 606 (2d Cir.1990) (*Sanders II*) (*quoting Sanders v. Sullivan,* 863 F.2d 218, 226 (2d Cir.1988)) (*Sanders I*). At this point, this Court is merely deciding whether or not a stay should be granted in order to enable the petitioner to present evidence of his due process claim to the state court. Without having conducted an evidentiary hearing to establish the value or credibility of Caban's recantation, the Court need not decide at this time the weight his testimony would have had on the jury who deliberated on his conviction for purposes of granting or denying the petition. The Court does find, however, that the allegations of perjury and actual innocence contained in Pacheco's amended petition do present issues appropriate for habeas review, such that the petition should not be summarily dismissed at this point. *See Morales v. Portuondo,* 154 F.Supp.2d 706, 720 (S.D.N.Y. 2001) (the court found "the due process implications were apparent," where petitioner offered statements of third party as proof of actual innocence).

## B. Timeliness

### 1. One–Year Statute of Limitations

A one-year statute of limitations applies to petitions for writs of habeas corpus by state prisoners. 28 U.S.C. § 2244(d). The limitations period begins to run from the latest of:

A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such state action;

C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1) (West Cumulative Annual Pocket Part 2001). In interpreting § 2244(d)(1)(A), the Second Circuit recently held that the limitations period "does not begin to run until the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or—if the prisoner elects not to file a petition for certiorari—the time to

seek direct review via certiorari has expired." *Williams v. Artuz,* 237 F.3d 147, 151 (2d Cir.2001).

■ Petitioners whose convictions became final prior to the enactment of the AEDPA are allowed a period of one year after the enactment date to file their petitions. *Ross v. Artuz,* 150 F.3d 97, 103 (2d Cir.1998). Pursuant to 28 U.S.C. § 2244(d)(2), the one-year limitations period may be tolled during the pendency of "a properly filed application for State post-conviction or other collateral review." This tolling provision merely "excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) *(per curiam ), cert. denied,* 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000).

Pacheco's state court conviction became final on September 7, 1993, the conclusion of ninety days during which he could have sought certiorari in the United States Supreme Court. *Ross,* 150 F.3d at 98. Because his conviction became final before the enactment of the AEDPA, the statute of limitations for Pacheco's writ of habeas corpus began to run on April 24, 1996, and ended on April 24, 1997. *Id.* at 103. Pacheco filed his amended petition on February 22, 2000, and it is, therefore, untimely unless the tardiness of his petition is excused.

### 2. Newly Discovered Evidence Under 28 U.S.C. § 2244(d)(1)(D)

■ The AEDPA "newly discovered evidence" provision runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," 28 U.S.C. § 2244(d)(1)(D) (West Cumulative Annual Pocket Part 2001), "from the date a petitioner is on notice of the facts which would support a claim, not from the date on which the petitioner has in his possession evidence to support his claim." *Youngblood v. Greiner,* 1998 WL 720681, at *4 n. 4 (S.D.N.Y. Oct. 13, 1998).

■ Respondent argues that Pacheco's reliance on Caban's recantation as "new evidence" under 28 U.S.C. § 2244(d)(1)(D) is unsound because Caban's statements exonerating Pacheco could have been "discovered" through due diligence. Affidavit in Opposition to the Amended Petition ("Aff.Opp.Pet.") at 12–14. Respondent argues that the statements contained in Caban's affidavit are merely newly *available,* not newly *discovered,* and thus is not covered under the aegis of § 2244(d)(1)(D). Citing *Sorce v. Artuz,* 73 F.Supp.2d 292, 298 (E.D.N.Y.1999), and arguing that Caban could have been contacted sooner, respondent appears to place particular importance on the fact that an outside organization contacted Caban about Pacheco's case, rather than Caban contacting the organization. *Id.* at 13. Respondent's reliance on both, however, is misplaced.

First, the facts of *Sorce* are distinguishable from those of the instant case. In *Sorce,* the petitioner sought to introduce the facts surrounding his co-defendant's cooperation agreement as newly discovered evidence for purposes of circumventing AEDPA's statute of limitations. 73 F.Supp.2d at 298. The petitioner argued that the statute of limitations began to run as of the date when he obtained the documents about his co-defendant's cooperation. *Id.* The court held that the petition was untimely because the documents— procured through Freedom of Information Law litigation—could have been earlier obtained through the exercise of due diligence. *Id.*

Unlike the petitioner in *Sorce,* the evidence with which Pacheco invokes

§ 2244(d)(1)(D) consists of the recantation of perjured testimony which could not simply have been obtained through the exercise of due diligence. The Court notes that this is a case based on eyewitness identification. Given the danger of an unreliable witness, petitioner had no way of knowing whether the testimony was perjured or merely mistaken. This sort of testimony is a unique form of newly discovered evidence in that it is completely incumbent on the recanting witness confessing to having misrepresented facts or having perjured himself. "Liars are hard to detect [... d]iscovery often comes by happenstance." Richard H. Underwood, *Perjury: An Anthology*, 13 Ariz. J. Int'l & Comp. L. 307, 379 (Fall 1996). In many cases, no amount of due diligence on the part of a petitioner can compel a witness to come forward and admit to prevaricated testimony; that the witness must have lied in the first instance for a reason. According to Pacheco's amended petition and the attached affidavit by Caban, Caban "identif[ied Pacheco,] an innocent man[,]" Amd. Pet. at Exh. S (Affidavit of Adrian Caban), in order to collect a reward from the police. Pacheco could not have "discovered" this evidence—Caban's willingness to recant his identification and affirmatively state that Pacheco was not the killer—until Caban wrote a letter indicating that he was "willing to help him 100%," *id.* (Letter from Adrian Caban), on August 16, 1999. Therefore, this Court finds that Caban's statements exonerating Pacheco should be considered "newly discovered" as of August 16, 1999,[1] for § 2244(d)(1)(D) purposes. Because Pacheco's amended petition was filed on May 24, 2000, well before the limitations period ended on August 16, 2000, this Court finds that the amended petition was timely.

## C. Mixed Petitions

■ Having decided that Pacheco's amended petition was timely filed, the Court must now determine how to proceed with his mixed petition. Prior to the enactment of the AEDPA, "mixed" petitions—those presenting both unexhausted and exhausted claims—had to be dismissed in their entirety; consequently, petitioners were left with the option of either exhausting the unexhausted claims in state court, or abandoning them entirely. *See Rose v. Lundy*, 455 U.S. 509, 519, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Now, district courts presented with a mixed petition may proceed in one of the following three ways: (1) deny the petition on their merits pursuant to 28 U.S.C. § 2254(b)(2), where the unexhausted claims are "patently frivolous," *Jones v. Senkowski*, 2002 WL 246451, at *4 (2d Cir. Oct.5, 2001); (2) dismiss the entire petition without prejudice, *Zarvela v. Artuz*, 254 F.3d 374, 382 (2d Cir.2001); or (3) stay the petition pending the exhaustion of state remedies "where an outright dismissal 'could jeopardize the timeliness of a collateral attack.'" *Id.* at 380 (*quoting Freeman v. Page*, 208 F.3d 572, 577 (7th Cir.2000)).

■ In the instant case, Pacheco's claim of newly discovered evidence proving actual innocence cannot be considered "patently frivolous" in light of Caban's affidavit. Dismissing the petition in its entirely would "jeopardize the timeliness of a collateral attack," *Zarvela*, 254 F.3d at 380, in that it would bar Pacheco from filing a

---

1. Because this Court has neither held a hearing to determine the credibility of Caban's statements, nor has it been able to review the state court credibility hearing, this finding of newly discovered evidence applies only for purposes of *staying* the petition. Should the case return to the Court after Pacheco has exhausted his state judicial remedies, the Court would have to make a separate credibility determination before deciding the amended petition on the merits.

subsequent habeas petition containing the same claims presented in the amended petition. The appropriate course of action, therefore, is to stay Pacheco's amended petition and retain jurisdiction pending exhaustion of state remedies.

Pursuant to the foregoing, Pacheco's motion to stay the petition is hereby **GRANTED.**

**IT IS HEREBY ORDERED THAT** all proceedings on this petition for habeas corpus are stayed to give Pacheco an opportunity to exhaust his state remedies on the claim of actual innocence based on newly discovered evidence.

**IT IS FURTHER ORDERED THAT**

(1) Pacheco must file a motion to vacate the conviction in state court, pursuant to New York Criminal Procedure Law § 440.10 by **April 6, 2002;** and

(2) Pacheco must return to this Court to renew his petition within **THIRTY DAYS** after the state courts have completed their review of his claims.

If Pacheco fails to fulfill both of these conditions, the Court may vacate the stay *nunc pro tunc* as of the date of this Order, and the petition may be dismissed. *Zarvela,* 254 F.3d at 381.