Alfred P. FUSI, Plaintiff,

v.

Steven O'BRIEN, Defendant.

Civil Action No. 07–10940–NMG.

United States District Court,
D. Massachusetts.

March 25, 2008.

Bernard Grossberg, Bernard Grossberg, Esq., Chauncey B. Wood, Wood & Nathanson, LLP, Boston, MA, for Plaintiff.

Jonathan M. Ofilos, Office of the Attorney General, Boston, MA, Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

The petitioner, Alfred P. Fusi ("Fusi") seeks habeas corpus relief on the grounds of inadequate assistance of counsel. Before the Court is the government's motion to dismiss the petition as time barred.

## I. Background

The petitioner was convicted on February 17, 1984, by a jury in the Essex Superior Court, of rape. The basis for his conviction was the identification by the victim. The victim's friends, in an effort to help her recall the features of her attacker, had shown her a recent yearbook from Saugus High School which, by coincidence, was from the year in which Fusi graduated from that school. Although he appeared in the yearbook four times, the victim did not identify him from any of those photographs. Six days later, the victim identified Fusi as her attacker based on his appearance in a seven-photograph array. When she subsequently identified Fusi in a lineup she stated that he must have gained 60 or 100 pounds since the attack; in fact he had gained no weight.

The attack allegedly took place in the back yard of 17 School Street in Saugus, Massachusetts, a residence owned by Mr. and Mrs. Leonard and Catherine Bartolo. The investigating police officer repeatedly questioned Mrs. Bartolo regarding whether or not she had heard anything during the alleged attack but Mrs. Bartolo consistently said that she had not.

Fusi was represented in his criminal defense by Richard Chambers ("Chambers"), an attorney who has since been disbarred for, among other violations, failure to fulfill promises made to his clients regarding his professional services to them. Fusi's second motion for a new trial alleged inadequate assistance of counsel. At the evidentiary hearing on that motion in 1986, Chambers testified that his efforts on Fusi's behalf had been properly diligent. In particular, he stated that he had attempted to speak to the Bartolos during the trial, following the victim's testimony.

Chambers also testified that he had been assigned to Fusi's defense by his father-in-law, but that he did not recall when. At the time of that evidentiary hearing Chambers was under investigation by the Board of Bar Overseers for prior instances of professional misconduct.

Chambers was subsequently disbarred. In 2003, Fusi's new counsel contacted Chambers to review the case with him. At that time, Chambers admitted that he had not exerted adequate efforts on Fusi's behalf. He signed an affidavit at that time stating that he had never made any attempt to interview the Bartolos, nor to conduct any investigation of the case apart from a single personal visit to the crime scene, prior to or during the trial. The affidavit also states that the case was assigned to Chambers two days before the trial began but he did not move for a continuance or make any effort to investigate it at all before the trial commenced.

The Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d), imposes a one-year statute of limitations on petitions for habeas corpus in federal court. For prisoners who were sentenced before the law went into effect, the limitations period began to run on the latest of four alternative dates, two of which are relevant here: 1) the effective date of AEDPA, April 24, 1996 and 2) the date on which the factual predicate for the petition "could have been discovered through the exercise of due diligence". 28 U.S.C. § 2244(d)(1). Fusi has been actively seeking post-conviction relief since he was sentenced in 1984. Since 1996, his procedural history is as follows:

1) April 24, 1996 to April 3, 2002: statute tolled because Fusi had a petition for a new trial pending in state court. Fusi contends that the statute had not even begun to run during that period because he had not learned of Chambers's misconduct but, in any event, those six years do not count against him.

2) April 3, 2002 to February 5, 2003: no action pending. This is the disputed period because Fusi alleges that it was not until February 5, 2003, when Chambers signed the affidavit admitting his misconduct, that the evidence to support his most recent petition for a new trial came to light. He asserts that the statutory period did not, therefore, commence until February 5, 2003.

3) February 5, 2003 to March 3, 2003: the parties agree that the statute ran for 28 days.

4) March 3, 2003 to November 30, 2006: statute tolled due to pending motion for new trial based on the alleged inadequate assistance of counsel by Chambers.

5) November 30, 2006 to May 17, 2007: statute ran for 140 days, bringing the uncontested total to 168 days (the government alleges an additional 306 days, *i.e.* the period described at # 2 above).

6) May 17, 2007: Fusi files the present petition.

## II. *Analysis*

The sole issue raised by the government's motion to dismiss this petition for habeas corpus is the date on which the one-year statute of limitations under AEDPA began to run. The government asserts that it began to run on April 24, 1996, when AEDPA went into effect. The petition contends that the statutory period began to run on February 5, 2003, because that was

the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(D). AEDPA provides that its one-year period "shall run from the latest of" four alternative dates, of which the above-quoted statutory provision is one. 28 U.S.C. § 2244(d)(1). The underlying question is, therefore, whether the "factual predicate" for Fusi's most recent motion for a new trial "could have been discovered through the exercise of due diligence" before Chambers signed his affidavit admitting his wrongdoing.

The government asserts that because Chambers's misconduct was complete in 1986, when he perjured himself regarding his actions in the course of Fusi's defense, the evidence of inadequate assistance was available to Fusi, given duly diligent attention, from that time forward. By its accounting more than one year of non-excludable time passed before Fusi filed this petition and it is, therefore, barred by AEDPA.

The government's contention rests on the distinction between the petitioner's *actual* knowledge of the factual predicate for his claim and the time when he *could have* known of it through the exercise of due diligence. In support of its position the government cites three cases in which appellate courts have declined to accept petitioners' proposals regarding when the AEDPA clock began to run.

The lone First Circuit Court of Appeals case is readily distinguishable from the present petition. In *Wood v. Spencer*, 487 F.3d 1 (1st Cir.2007), the district court found that the factual predicate in question was actually known by the petitioner at the time of the trial. *Id.* at 5. The second case, *Schlueter v. Varner*, 384 F.3d 69 (3d Cir.2004), concerned a factual predicate characterized by the court as "common knowledge". In the third, the court found that the statute began to run at the time of the signing of the affidavit, as Fusi urges in this case. *Daniels v. Uchtman*, 421 F.3d 490 (7th Cir.2005).

The petitioner responds that perjury is uniquely difficult to discover without an admission from the perjuring witness. His own difficulty was compounded, of course, by the fact that the perjurer was his own counsel, the person who should have been working most diligently on his behalf. Although this Circuit has not spoken directly to the issue of perjured testimony relative to § 2244(d)(1)(D), the Southern District of New York aptly noted that

> In many cases, no amount of due diligence on the part of a petitioner can compel a witness to come forward and admit to prevaricated testimony; that [sic] the witness must have lied in the first instance for a reason.

*Pacheco v. Artuz*, 193 F.Supp.2d 756, 761 (S.D.N.Y.2002). It would be unfair, therefore, to require the petitioner to verify the testimony of his own attorney in order to meet the burden of "due diligence". The factual predicate for this petition could not have been discovered through reasonable efforts before Chambers had signed his affidavit. The AEDPA clock began to run on February 5, 2003 and this petition was timely filed. The government's motion to dismiss the petition as time-barred will, therefore, be denied.

**ORDER**

Because the factual predicate underlying this petition could not have been discovered through the exercise of due diligence before February 5, 2003, the government's motion to dismiss (Docket No. 7) is **DE-NIED**. The government may file a further response to the petition on or before April 30, 2008, in default of which the petition will be granted.

**So ordered.**