Sherman WALKER, Petitioner–Appellant,

v.

Christopher ARTUZ, Superintendent, Respondent–Appellee.

Docket No. 98–2572

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1999

Decided: March 27, 2000

George W. Galgano, Jr., (Deborah Woli-kow Loewenberg, on the brief) New City, NY, for Petitioner–Appellant.

Mary Lynn Nicolas, Assistant Attorney General, (Eliot Spitzer, Attorney General, Preeta D. Bansal, Solicitor General, Michael S. Belohlavek, Assistant Attorney General, on the brief) New York, NY, for Respondent–Appellee.

Before: WALKER, LEVAL, and POOLER, Circuit Judges.

POOLER, Circuit Judge:

Sherman Walker appeals from the May 18, 1998, judgment of the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*) dismissing his petition for a writ of habeas corpus.

## BACKGROUND

A jury convicted Walker of first-degree robbery in Queens County Supreme Court in June 1992, and the state Appellate Division affirmed the conviction in June 1995. The New York Court of Appeals denied Walker leave to appeal his conviction on January 15, 1996. Walker's conviction therefore became final on April 14, 1996, when his time expired to seek direct review by writ of certiorari to the United States Supreme Court. Walker pursued a state collateral attack on his conviction and petitioned for a writ of error *coram nobis,* which the Appellate Division denied on March 18, 1996. According to appellant, he also filed a separate motion in February 1996 to vacate his conviction in state court, which denied the motion in April 1996.

In a single document dated April 10, 1996, Walker filed in federal court a complaint pursuant to 42 U.S.C. § 1983 and a habeas corpus petition pursuant to 28 U.S.C. § 2254. The district court for the Eastern District of New York dismissed the complaint and petition without prejudice on July 9, 1996, because (1) Walker failed to state a Section 1983 claim against his court-appointed lawyers, who were not state actors; and (2) it was not apparent from the petition what issues Walker had raised in his direct criminal appeals and whether Walker had exhausted his state-court remedies. *See Walker v. Legal Aid Soc'y,* No. 96 CV 2946, 1996 WL 391585, at *1–2 (E.D.N.Y. July 9, 1996). About 11 months later, Walker filed in federal court a second habeas corpus petition dated May 20, 1997. In a memorandum and order dated May 6, 1998, Judge Johnson dismissed the second petition as untimely pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because Walker filed it more than one year after the effective date of the AEDPA, or April 24, 1996. Judge Johnson also noted that Walker filed his second habeas petition more than one year after completing his direct criminal appeal and nearly one year after the court dismissed his first habeas petition. On December 18, 1998, we granted Walker a certificate of appealability regarding these two issues: first, whether Walker's first habeas petition tolled the one-year statute of limitations, and second, whether equitable tolling applied to make Walker's second habeas petition timely. Because we answer the first question in the affirmative, we need not reach the issue of equitable tolling. Walker's appeal presents questions of law that we review *de novo.*

## DISCUSSION

Walker's appeal presents a narrow question regarding proper interpretation

of Section 2244's statute of limitations and tolling provisions. At issue is whether the AEDPA's mandate to toll its one-year limitations period during the pendency of "other collateral review" applies to properly filed federal habeas petitions or only to applications for state review. *See* 28 U.S.C. § 2244(d)(2).

In general, the AEDPA restricts the ability of prisoners to seek federal review of their state criminal convictions. Section 2244(d) created a new one-year statute of limitations in which state prisoners could file applications for a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). The one-year period generally runs from the date on which the state criminal judgment became final. *See id.* Prisoners like Walker, whose convictions became final prior to the AEDPA's effective date of April 24, 1996, have a one-year grace period in which to file their habeas corpus petitions, or until April 24, 1997. *See Ross v. Artuz,* 150 F.3d 97, 102–03 (2d Cir.1998). Section 2244 also has a tolling provision that applies to both the statute of limitations and the one-year grace period. *See Bennett v. Artuz,* 199 F.3d 116, 119 (2d Cir.1999) (holding that the "AEDPA's pending-state-petition tolling provision does apply to a petition challenging a pre-AEDPA conviction"), *cert. granted,* —— U.S. ——, 120 S.Ct. 1669, 146 L.Ed.2d 479 (2000). The tolling provision at Section 2244(d)(2) states:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Walker interprets Section 2244(d)(2), specifically the phrase "other collateral review," to mean that we should exclude from the one-year grace period the time during which his first, timely habeas corpus petition was pending in federal court. That exclusion of approximately 80 days

would render his second habeas petition timely. Respondent interprets the phrase "other collateral review" to mean only state procedures or remedies. Under this view, no tolling takes place and Walker's second habeas petition is untimely because he filed it after the one-year grace period ended on April 24, 1997. Both Walker and respondent claim that their interpretations rely on the plain language of Section 2244(d)(2) and are consistent with the legislative goals of the AEDPA.

Although a number of federal district courts have addressed this question, only one other circuit court of appeals has decided the issue. In *Jones v. Morton,* the Third Circuit held that Congress "intended that the word 'State' would be read to modify both 'post-conviction' and 'other collateral,' so that tolling would be afforded under § 2244(d)(2) for various forms of state review only." *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999). The Third Circuit relied upon a California federal district court case, *Sperling v. White,* 30 F.Supp.2d 1246, 1250 (C.D.Cal.1998), as well as other district court cases adopting *Sperling*'s interpretation. *See Jones,* 195 F.3d at 158–59. In *Sperling,* the district court adopted the report and recommendation of a magistrate judge holding that Section 2244(d)(2) "does not contemplate tolling limitations during the time a habeas petition is pending in federal court." *Sperling,* 30 F.Supp.2d at 1250. *But see Barrett v. Yearwood,* 63 F.Supp.2d 1245, 1249–50 (E.D.Cal.1999) (reaching opposite result). We respectfully disagree with the *Jones* approach.

It is possible to interpret the word "State" in Section 2244(d)(2) to modify both "post-conviction" and "other collateral." Close analysis of the statute language, however, shows that "State" modifies only the word "post-conviction," and the phrase "other collateral" is to be given its naturally broader meaning. The disjunctive "or" in the statute creates a distinct break between the two kinds of review *Jones* and *Sperling* would tie to-

gether. In contrast, applying "State" to both of the disjunctive phrases would create a linguistic oddity because the statute would refer to "a properly filed application" for "State post-conviction ... review" or "State ... other review." "State other *collateral* review" is an ungainly construction that we do not believe Congress intended. If Congress had intended the meaning that the *Sperling* court imputed, it might more naturally have written "a properly filed application for State post-conviction or collateral review." We choose to adopt an interpretation that gives full meaning to the phrase "State post-conviction review," which includes all state remedies, and the phrase "other collateral review," which means federal habeas petitions. As the district court held in *Barrett,* " 'State post-conviction review' means all collateral review of a conviction provided by a state," and the phrase "other collateral review" would be meaningless if it did not refer to federal habeas petitions. *Barrett,* 63 F.Supp.2d at 1250.

■ In addition, the district court's interpretation in *Sperling* strains to hold that "State post-conviction review" means state judicial remedies and "other collateral review" means non-judicial state remedies such as petitions for clemency filed with the governor. *See Sperling,* 30 F.Supp.2d at 1251. This reading would require us to interpret at least one of these terms differently from its normal usage, because both "collateral review" and "post-conviction review" conventionally refer to habeas corpus, *coram nobis* and similar writs or judicial orders that courts issue after a conviction is final, overturning the conviction by reason of some error of law. *Sperling* read "collateral" to apply to clemency and pardon applications in order to avoid having it refer to the same scope of proceedings as "post-conviction review" describes, but we can see no logical reason why Congress would have thought those applications to be included in the term "collateral" but not "post-conviction." The only legislative history upon which the

*Sperling* decision relies for its equation of "other collateral review" with petitions for clemency is a statement of Senator Orrin Hatch concerning a totally different proposed amendment to the legislation and discussed in the context of capital cases. *See id.* at 1251 (citing 141 Cong. Rec. S7803–01, S7825–26 (June 7, 1995) as "appearing to describe a state petition for clemency as a form of collateral review, but distinct from judicial post-conviction review"). The *Sperling* court's own characterization of the legislative history provides only a slender reed upon which to rest its holding. Because "post-conviction review" is a broad term that seems to encompass all review a prisoner seeks after conviction, we can see no reason why Congress should have believed that there were "other" forms of "collateral review" that did not come within the scope of "post-conviction review."

■ The *Sperling* court also held that its interpretation was consistent with the overall objective of the AEDPA "to place finite restrictions upon the time within which a petitioner may file a petition in federal court." *Id.* at 1251. However, allowing Walker to exclude the time during which his first federal habeas petition was pending does not create a loophole in the law. The tolling provision by its terms already pertains only to "properly filed application[s]." 28 U.S.C. § 2244(d)(2). Thus, for example, successive petitions arguably would not toll the one-year period. Even if they did, the act's restrictions on successive petitions, *see* 28 U.S.C. § 2244(b), would not allow a petitioner to file another petition if the district court dismissed a first petition on its merits or with prejudice. We therefore disagree with respondent that our reading would frustrate the AEDPA's purpose by allowing petitioners to indefinitely toll the statute of limitations by filing a series of unexhausted petitions.

Moreover, including federal petitions within the meaning of Section 2244(d)(2) will reward petitioners for filing their fed-

eral petitions as soon as possible, thus promoting the statutory objective of efficiency in the review of state criminal judgments. Congress enacted the limitations period to spur defendants to file their federal habeas petitions more quickly, and reading the tolling provision to encompass federal court consideration of the petitions furthers this goal. Under our reading of the statute, defendants will have an incentive to file their federal petitions right away because this filing will toll the one-year statute of limitations. This tolling is particularly useful for a petitioner if, upon review, the federal court determines that he must return to state court to exhaust his claims. Meanwhile, if the claims are properly before the federal court, this incentive leads to speedier completion of collateral review.

We must examine the issue before us in the historical context of the AEDPA. This statute created a one-year statute of limitations where none previously existed. *See Ross*, 150 F.3d at 98. This in itself was a dramatic change in the law and was Congress' primary vehicle for streamlining the habeas review process and lending finality to state convictions. By reading the tolling provision of Section 2244 to include pending federal habeas petitions, we do not detract from the overall purpose of the AEDPA because the statute of limitations remains enforceable and intact. Our interpretation merely avoids penalizing state prisoners who properly have filed federal habeas petitions and are awaiting a response from the court.

In adopting the contrary position, the Third Circuit did not "dwell" on the issue before it because it believed the majority of courts considering the issue adopted the *Sperling v. White* approach. *See Jones*, 195 F.3d at 158–59. We do not see a consensus emerging. It is true that three other California district court cases are consistent with the *Sperling* decision issued in the Central District of California. *See Harrison v. Galaza*, No. C 98–3371 TEH (PR), 1999 WL 58594, at *2 (N.D.Cal. Feb. 4, 1999); *Vincze v. Hickman*, No. CIV.S–98–044 WBSGGHP, 1999 WL 68330, at *1 (E.D.Cal. Jan. 13, 1999); *Babcock v. Duncan*, No. C 97–2740 VRW (PR), 1997 WL 724450, at *2 (N.D.Cal. Nov. 12, 1997). As noted above, however, we find the analysis of the California minority position in *Barrett* to be more persuasive. *See Barrett*, 63 F.Supp.2d at 1249–50. In addition, one of the district court cases upon which both *Jones* and *Sperling* rely does not clearly support their position. In the Wisconsin case of *Kethley v. Berge*, the district court indeed held that "time is not tolled while an improperly filed *federal* habeas petition is gathering dust on district court shelves" pursuant to Section 2244(d)(2). *See Kethley v. Berge*, 14 F.Supp.2d 1077, 1079 (E.D.Wis.1998). However, the Wisconsin court also recognized the inequity resulting from its interpretation, stating that "the procedural dismissal of petitioner's action in the present case should not later be construed to produce the unintended effect of barring federal habeas review under the AEDPA statute of limitations provision." *Id.* The *Kethley* court remedied this problem by permitting the petitioner to reopen his petition after exhausting state remedies and preserve his original case number and filing date as "a form of equitable tolling of the AEDPA's limitations period." *Id.* at 1079. Cases purporting to follow *Kethley's* interpretation of Section 2244(d)(2) have not adopted this second part of the solution. Although we agree with the Wisconsin court's assessment of the inequity its interpretation of Section 2244(d)(2) creates, we find its solution to the problem—preserving the original petition's case number and filing date—to be artificial and cumbersome. A much simpler approach is to interpret the words of Section 2244(d)(2) to allow tolling outright in cases such as Walker's.

Because we decide that Section 2244(d)(2) by its terms tolled the one-year period of limitations while Walker's first

federal habeas petition was pending, we need not reach his alternative argument that the court should exercise its equitable powers to exclude the approximately 80 days during which the first petition was pending.

## CONCLUSION

For the foregoing reasons, we reverse the district court's dismissal, reinstate Walker's petition for *habeas corpus* relief, and remand the matter to the district court for further proceedings.