**William Anthony EVANS, Petitioner,**

v.

**Daniel SENKOWSKI, Superintendent Clinton Correctional Facility, Respondent.**

No. CV 98–4488.

United States District Court, E.D. New York.

Oct. 17, 2002.

William Evans, Coxsackie, NY, Petitioner, Pro se.

Denis Dillon, Esq., Nassau County District Attorney by Tammy J. Smiley, Esq., Alexis Kriedman, Esq., Assistant Nassau County District Attorneys, Mineola, NY, for Respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

William Evans petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 1992 state court convictions on robbery charges. In a decision dated October 12, 1999, (the "October 1999 Order"), the court reserved decision and ordered the parties to submits briefs on what was, at the time, a novel statute of limitations issue. That issue was whether or not the filing of a prior habeas petition tolls the one year statute of limitations contained in the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").

After identifying and requesting briefing on this issue, the Second Circuit decided the case of *Walker v. Artuz*, 208 F.3d 357 (2d Cir.2000). There, the court held that a prior properly filed habeas corpus petition, dismissed without prejudice, tolls the one-year limitations period under AEDPA. After the decision of the Second Circuit in *Walker*, this court issued a memorandum and order dated June 30, 2000. The decision held that even assuming the toll, the petition was, nonetheless, untimely.

Petitioner appealed the June 30, 2000 dismissal to the Second Circuit. While the appeal was pending, the United States Supreme Court reversed the Second Circuit's *Walker* decision, *see Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). In *Duncan*, the Supreme Court held that a petition for habeas corpus relief does not constitute "other collateral review" that tolls the AEDPA period of limitations. In light of the decision in *Duncan*, the parties entered into a joint stipulation to remand this action.

The Second Circuit's order of remand directs this court to consider three specific issues. First, this court is to determine the timeliness issue in light of the Supreme Court's decision in *Duncan* as well as in light of the Second Circuit case of *Zarvela v. Artuz*, 254 F.3d 374 (2d Cir. 2001). Second, if the court continues to conclude that this petition is untimely, the court is to consider whether it remains untimely if the court applies the "mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). As a related matter, this court was directed to address burden of proof issues in connection with application of the mailbox rule. Third, the Second Circuit's remand order directs that, even if the petition is held untimely after consideration of the foregoing issues, this court is to consider wheth-er the petition should be decided on the merits on the ground of actual innocence.

## BACKGROUND

### I. *Petitioner's State Convictions*

Evans was convicted in New York State Court on charges stemming from several bank robberies that took place between November 8, 1989 and February 7, 1990. After being charged with two counts of first degree robbery, one count of third degree robbery and one count of third degree attempted robbery, a pretrial suppression hearing was held. That hearing resulted in a determination that the seizure of Petitioner's car was appropriate and identification testimony as well as oral statements made by Evans to police would be admissible at trial.

After a jury trial, Evans was convicted on each count of the indictment. On May 12, 1992, he was sentenced. That sentenced was later vacated by the trial court and Evans was ultimately sentenced, on June 1, 1992, as a persistent felony offender, to four consecutive terms of incarceration of twenty-five years to life.

### II. *Post–Conviction Litigation*

#### A. *Direct Appeal*

Evans appealed his conviction to the Appellate Division of the New York State Supreme Court ("Appellate Division"). The Appellate Division issued a decision affirming the conviction in all respects. Specifically, the Appellate Division rejected arguments: (1) attacking the veracity of the testimony of police officers; (2) alleging the impropriety of the warrantless arrest of defendant and accompanying seizure of his vehicle; (3) that Evans was deprived of his right to remain silent; (4) that a hearing was required prior to the denial of a speedy trial motion; (5) that the trial judge was biased and (6) that the

sentence was excessive. Despite the affirmance of the conviction, the Appellate Division exercised its discretion to modify Petitioner's sentence to four concurrent (as opposed to consecutive) terms of imprisonment of twenty-five years to life. *See People v. Evans*, 212 A.D.2d 626, 623 N.Y.S.2d 4 (2d Dep't 1995). In an order dated May 15, 1995, the Appellate Division denied a motion for reargument of the appeal. Evans sought leave to appeal his conviction to the New York State Court of Appeals. That request was denied. *See People v. Evans*, 86 N.Y.2d 841, 634 N.Y.S.2d 451, 658 N.E.2d 229 (1995).

## B. *First Habeas Petition*

Evans submitted a petition for habeas corpus relief to this court in 1996. Respondent argued that certain claims presented in that petition were unexhausted and urged that those claims be treated as subject to a procedural bar. In response, Petitioner wrote a letter to this court dated June 7, 1997, seeking to withdraw his petition without prejudice or, in the alternative, to adjourn decision on the petition for a period of one year, to permit the gathering of evidence in support of Petitioner's claims. On June 18, 1997, this court dismissed, without prejudice, the first habeas petition.

## C. *State Court Collateral Attack*

Despite the fact that Petitioner had filed a petition for habeas relief, he continued to seek collateral relief from his conviction in state court. On October 30, 1996, the County Court for Nassau County received Petitioner's motion, pursuant to Section 440 of the New York State Criminal Procedure Law, to vacate his conviction and set aside his sentence (the "First Section 440 Motion"). Evans has taken the position that he handed the First Section 440 Motion to prison officials for mailing on October 22, 1996.[1]

On December 18, 1996, the County Court denied Petitioner's First Section 440 Motion (the "December 18 Decision"). After receiving notice of this denial, Evans made an application to the Appellate Division, dated January 9, 1997, for leave to appeal the December 18 Decision. On February 27, 1997, the Appellate Division denied this application for leave to appeal. Evans sought to appeal the February 27, 1997 decision to the New York Court of Appeals. In an order dated May 7, 1997, the New York Court of Appeals denied leave to appeal, stating that the order was not appealable under the Criminal Procedure Law.

At the same time that Evans was litigating the December 18 Decision, he was also litigating a motion to amend/reargue the First Section 440 Motion. Specifically, on December 20, 1996, two days after the December 18 Decision, Evans submitted to the County Court a motion to "amend" the First Section 440 Motion. Presumably, this request for amendment was made prior to Petitioner's knowledge of the December 18 Decision.

In an order dated February 11, 1997, the County Court, having deemed the December 20 motion to amend to be a motion to reargue, denied the motion. Evans sought to appeal the denial of reargument and moved, before the Appellate Division, for leave to appeal the County Court's February 11, 1997 decision on that mo-

---

1. In recent correspondence to this court, Evans states that the date that the First Section 440 Motion was "pending" was November 6, 1996. Because the October 22, 1996 date is more favorable to Evans, the court will consider that date as the date upon which the motion was filed.

tion.[2] On May 2, 1997, the Appellate Division denied the application for leave to appeal the denial of reargument. Evans sought to appeal that decision to the New York Court of Appeals. In an order dated June 26, 1997, the Court of Appeals dismissed this application in similar fashion to its earlier decision stating, once again, that the order sought to be appealed from was not appealable.

Evans instituted a second motion pursuant to Section 440 of New York's Criminal Procedure Law in 1998 (the "Second Section 440 Motion"). According to Evans, the Second Section 440 Motion was given to prison officials for mailing on January 27, 1998. The records of the County Court indicate receipt of this motion on February 2, 1998. On March 24, 1998, the County Court denied the Second Section 440 Motion. On April 1, 1998, Evans sought leave to appeal the denial of the Second Section 440 Motion to the Appellate Division. On May 14, 1998, the Appellate Division denied the request for leave to appeal.

### D. *The Second Habeas Petition*

On June 22, 1998, Evans gave his second habeas petition to prison officials for mailing. That petition, the timeliness of which is at issue here, was received in this court on June 30, 1998.

### DISCUSSION

**I.** *Time Limitations and Tolling under AEDPA*

As set forth in the earlier orders of this court, Petitioner, whose state court conviction became final several years prior to the April 24, 1996 effective date of AEDPA, had one year from that date (until April 24, 1997) in which to file a petition for a writ of habeas corpus. *Adeline v. Stinson,* 206 F.3d 249, 251 (2d Cir.2000); *see Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir.1998); *Felton v. Mazzuca,* 2002 WL 655207 *2 (S.D.N.Y.2002).

AEDPA provides for a toll of the one year period during certain circumstances. Specifically, the one year time period is tolled during the time when "a properly filed application for State post-conviction or other collateral review ... is pending." 28 U.S.C. § 2244(d)(2). Prisoners whose convictions became final prior to the affective date of AEDPA are entitled to take advantage of this tolling provision. *Bennett v. Artuz,* 199 F.3d 116, 120 (2d Cir. 1999), *aff'd. on other grounds,* 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000).

■ When calculating the proper toll, the court must consider the precise time period when a post-conviction motion is "pending." As recently set forth by the Supreme Court in *Carey v. Saffold,* 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002), a state court application is "pending" for the purpose of AEDPA's toll, from the time of filing "until the application has achieved the final resolution through the State's post-conviction procedures." *Id.* at 2138; *see Bennett,* 199 F.3d at 120 (properly filed petition is " 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under state procedures"). The relevant date of final disposition is the date of issuance of a court order, not the date upon which such order is received by petitioner. *Geraci v. Senkowski,* 211 F.3d 6, 9 (2d Cir.2000); *Bond v. Walsh,* 2002 WL 460046 *2 n. 2 (E.D.N.Y.2002).

---

**2.** Although the Appellate Division decision is dated February 11, 1997, this decision is referred to, by the Court of Appeals, as the February 14, 1997 order. This is presumably because February 14 is the date that the order was entered by the Clerk of the Court.

 AEDPA's toll does not apply to the filing of all motions or other papers seeking relief; it applies only to papers filed in connection with relief recognized under relevant state procedures. *Adeline v. Stinson*, 206 F.3d at 252–53. Thus, the filing of "unrecognized motions for leave to appeal" will not toll the running of the AEDPA statute of limitations. *Id.* at 253; *see, e.g., Bond v. Walsh* 2002 WL 460046 *2 (refusing to toll AEDPA statute during time period when habeas petitioner ignored state procedures and sought relief "plainly unavailable" under New York rules of procedure); *Edwards v. Greiner*, 2002 WL 1467708 *2 (E.D.N.Y. May 7, 2002) (refusing to toll AEDPA statute during time when petitioner appealed denial of a section 440 motion to the Court of Appeals since no such appellate review is available under New York law). As recognized by the Second Circuit, any holding to the contrary would allow a defendant to "stave off the running" of the statute of limitations for as long as the state court was willing to keep open the door to its clerk's office or 'in perpetuity.' *Adeline*, 206 F.3d at 253.

 It is important to note that AEDPA's tolling provision does not allow the one year period to run anew each time a post-conviction motion is ruled upon. Instead, the statute merely excludes from the calculation of the one year period any time during which post-conviction relief is pending. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.) (per curiam), *cert. denied*, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000); *Felton v. Mazzuca*, 2002 WL 655207 *2 (S.D.N.Y.2002); *Torres v. Miller*, 1999 WL 714349 *4 (S.D.N.Y. August 27, 1999). Thus, the provision stops, but does not reset, the clock from ticking on the time in which to file a habeas petition. It cannot revive a time period that has already expired. *McGinnis*, 208 F.3d at

17; *see Brooks v. Artuz*, 1999 WL 138926 *2 (S.D.N.Y. March 15, 1999).

## II. *The Effect of a Federal Habeas Petition On Tolling*

### A. *Duncan v. Walker*

In *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), the Supreme Court made clear that a petition for habeas corpus relief does not constitute "other collateral review" that tolls the AEDPA period of limitations. Thus, contrary to prior Second Circuit law (which *Duncan* reversed and upon which this court relied in its June 2000 decision), it is now clear that the filing of a federal habeas petition that is later dismissed, does not effect the running of the AEDPA one year period of limitation.

### B. *Zarvela v. Artuz*

In *Zarvela v. Artuz*, 254 F.3d 374 (2d Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 506, 151 L.Ed.2d 415 (2001), a decision rendered after *Duncan*, the Second Circuit considered the timeliness of a habeas petition filed after a previously dismissed timely petition. In *Zarvela*, the Second Circuit considered the options available to a district court contemplating dismissal of a habeas petition containing both exhausted and unexhausted claims. Prior to imposition of the one year statute of limitations, dismissal of such a "mixed" petition, with leave to refile after exhausting all claims in state court, would have no consequence on a federal court's ability to render a decision on the merits. Thus, before the effective date of AEDPA, it made no real difference whether a district court chose to dismiss or stay a mixed petition.

Imposition of the one year statute of limitations, however, along with the Supreme Court's holding in *Duncan*, makes the decision whether to stay or dismiss critical to the timeliness issue. In cases

where the filing of the habeas petition was made shortly before the running of the one year statute, dismissal of the petition could leave little or no time for the petitioner to exhaust his state remedies before returning to federal court with a fully exhausted second habeas petition. Thus, dismissal could jeopardize a petitioner's ability to file a later timely petition that could be decided on the merits. A stay, on the other hand, would preserve the timeliness of the first filing.

To ameliorate the situation that exists where a mixed habeas petition is filed just prior to the running of the AEDPA statute of limitations, the Second Circuit held that certain circumstances dictate entry of a stay, rather than outright dismissal, of the habeas petition. *Zarvela*, 254 F.3d at 380. The Second Circuit made clear in *Zarvela*, however, that a stay is only required in cases where dismissal would jeopardize the timeliness of a later collateral attack. *Zarvela*, 254 F.3d at 380. It was further recognized that imposition of an indefinite stay would be inappropriate. Instead, it was held that a stay should be conditioned upon prompt action by the petitioner so as to comport with AEDPA's policy of the timely disposition of habeas petitions. *See Zarvela*, 254 F.3d at 381–82; *Aparicio v. Artuz*, 269 F.3d 78, 91 n. 5 (2d Cir.2001).

In sum, *Zarvela* holds that a mixed petition, filed on the eve of the running of the AEDPA statute of limitations, should be stayed rather than dismissed. A stay, however, is to be entered only on the condition that the petitioner return to the state court in a timely manner (normally within thirty days) and thereafter return promptly to federal court once the state court has disposed of the previously unexhausted claims (again, normally within

thirty days). *Zarvela*, 254 F.3d at 381; *e.g.*, *Priester v. Senkowski*, 2002 WL 1448303 *8 (S.D.N.Y.July 3, 2002) (staying mixed habeas petition on condition that petitioner return to state court within thirty days to appeal the denial of his section 440 motion to the Appellate Division).

Having outlined the relevant legal standards, the court turns to consider the issues set forth in the Second Circuit's order of remand.

## ANALYSIS

I. *Consideration in Light of Duncan and Application of the "Mailbox Rule"*

The decision of this court considered the timeliness of the present petition under the impression that the filing of the first habeas petition tolled the statute of limitations. *Duncan* makes clear, however, that this was not the proper approach. Thus, the court turns to consider whether the present petition is timely when considering only Petitioner's state court proceedings. Specifically, the question is whether the state court proceedings, standing alone, sufficiently tolled the AEDPA statute of limitations so as to render the present petition timely.

 Petitioner was convicted in 1992. Since Petitioner's conviction became final prior to the enactment of AEDPA, he had 365 days from April 24, 1996, in which to file his habeas petition. In the absence of any tolling, this petition would have been required to have been filed by April 24, 1997. The petition, however, was not filed until June 30, 1998. The question to be decided is whether Petitioner's state court post-conviction activity tolled the statute sufficiently so as to render the instant petition timely.[3] With respect to such ac-

---

3. In light of the fact that the AEDPA statute did not begin to run until April of 1996, any

post-conviction practice taking place before

tivity, the date upon which a motion is filed stops the running of the AEDPA clock and the day that the motion is finally decided starts the AEDPA clock running once again. *See Geraci v. Senkowski,* 211 F.3d 6, 9 (2d Cir.), *cert., denied,* 531 U.S. 1018, 121 S.Ct. 581, 148 L.Ed.2d 497 (2000).

Before turning to discuss particular time periods, the court notes that a choice must be made when determining the date when a toll begins. As set forth in the Second Circuit's order of remand, there is the issue of whether the toll begins on the date that state court post-conviction papers are handed to a prison official for mailing, as set forth in the "mailbox rule" of *Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). The court notes that since the order of remand, at least one district court has held that the mailbox rule should govern such decisions. *See Fernandez v. Artuz,* 175 F.Supp.2d 682, 687 (S.D.N.Y.2001).

Decision by this court on the mailbox rule issue is not necessary. This is because, even assuming its application, the petition, as discussed below, is not timely. Accordingly, for purposes of this opinion, the court assumes application of the mailbox rule to calculation of the toll of the AEDPA statute of limitations. The court has calculated the time periods below (and accepts the dates in the light most favorable to Petitioner) under the assumption that the handing of his state court papers to prison officials begins the toll.

II. *Calculation of Petitioner's AEDPA "Clock"*

A. *The AEDPA Period Was Tolled Between the Filing of the First Section 440 Motion and The Appellate Division's Denial of Leave to Appeal*

 Petitioner's AEDPA clock had 365 days as of April 24, 1996. The clock ran

the effective date of AEDPA is irrelevant and

for a period of 181 days, until October 22, 1996, when Evans gave the First Section 440 Motion to prison officials for mailing. The handing of these documents to prison officials is assumed, for purposes of this opinion, to toll the AEDPA limitations period. Thus, as of October 22, 1996, Petitioner had 184 days left on his AEDPA clock. The County Court denied the First Section 440 Motion on December 18, 1996 and on February 27, 1997, the Appellate Division denied Petitioner's request for leave to appeal that decision.

As noted above, Petitioner is entitled to a toll of the AEDPA statute of limitations for as long as this application for state court relief was pending, *i.e.,* from the time of filing until final resolution through state post-conviction procedures. *See Carey,* 122 S.Ct. at 2138. Applying this standard to New York's post-conviction procedures clearly tolls the AEDPA statute of limitations from the filing of the First Section 440 Motion until the denial of appeal by the Appellate Division. *Gomez v. Duncan,* 2002 WL 1424584 *3 (S.D.N.Y. July 1, 2002); *see Geraci v. Senkowski,* 211 F.3d 6, 9 (2d Cir.2000).

B. *The AEDPA Period Was Not Tolled by Additional Motion Practice Regarding the First Section 440 Motion*

After the Appellate Division's February 27, 1997 denial of leave to appeal the December 18 Decision, Evans engaged in additional motion practice. He sought leave to appeal the Appellate Division February 27, 1997 order to the Court of Appeals. That request was denied by the Court of Appeals on May 7, 1997.

Petitioner also sought to have the Appellate Division review the County Court's

will not be discussed here.

February 11, 1997, denial of reargument. The Appellate Division denied this request for review on May 2, 1997, and the Court of Appeals denied further review in an order dated June 26, 1997. Both the May 7, 1997 and June 26, 1997 orders of the New York Court of Appeals state specifically that review was declined because the orders sought to be appealed were not appealable under New York State law.

Petitioner takes the position that each and every motion paper filed tolled the running of the AEDPA statute of limitations. Respondent disagrees. While conceding that the Appellate Division order of February 27, 1997 tolled the AEDPA statute, it is argued that neither the May 2, 1997 denial of leave to appeal the motion to reargue the February 11, 1997 decision, nor the two Court of Appeals decisions denying leave to appeal, should have any effect on the running of the statute. This argument is based upon the contention that these motions are not authorized under New York State procedural law.

■ AEDPA's toll applies only to post-conviction applications that are "properly filed." *See* 28 U.S.C. § 2244(d)(2). While this requirement has nothing to do with the merits of motions filed, the "properly filed" requirement has everything to do with state procedural law. As recognized by the Second Circuit, papers are "properly filed," and AEDPA is tolled, only if the papers are filed in connection with relief recognized under relevant state procedures. *Adeline v. Stinson*, 206 F.3d at 252–53. Thus, the filing of "unrecognized motions for leave to appeal" will not toll the running of the AEDPA statute of limitations. *Id.* at 253. As demonstrated below, because neither the motion to appeal the denial of reargument, nor the motions for leave to appeal to the Court of Appeals, are recognized under New York State procedural law, the pendency of these two

motions did nothing to toll the statute of limitations.

1. *AEDPA Is Not Tolled During the Pendency of An Appeal of a Trial Court's Denial of a Motion to Reargue*

■ New York law is clear that there is no procedural vehicle for appeal of a motion to reargue. *Falci v. Battista*, 240 A.D.2d 364, 364, 658 N.Y.S.2d 1015, 1015 (2d Dep't 1997); *Mardiros v. Ghaly*, 175 A.D.2d 680, 680, 573 N.Y.S.2d 927, 927 (4th Dep't 1991); *Sturgis v. Wolfe*, 148 A.D.2d 770, 771, 538 N.Y.S.2d 350, 352 (3d Dep't 1989); *Fahey v. County of Nassau*, 111 A.D.2d 214, 214, 489 N.Y.S.2d 249, 249 (2d Dep't 1985); *Magliano v. Merckling*, 99 A.D.2d 825, 826, 472 N.Y.S.2d 419, 419 (2d Dep't 1984). Because no such appeal exists, the time period in between the filing of the motion for leave to appeal the trial court's February 11, 1997 denial and the Appellate Division's May 2, 1997, denial of leave to appeal does not operate to toll the AEDPA statute of limitations.

2. *AEDPA Is Not Tolled During the Pendency of Unauthorized Motions Seeking Leave to Appeal to the New York Court of Appeals*

The same conclusion is reached with respect to Petitioner's motions seeking leave to appeal to the New York Court of Appeals. After the Appellate Division denied Petitioner leave to appeal the First Section 440 Motion, the "door to the New York Court of Appeals was closed and further appellate review was unavailable." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 70 (2d Cir.2001), quoting, *Geraci*, 211 F.3d at 9. Because there is no New York procedure allowing appeal to the Court of Appeals after the Appellate Division denies leave to appeal a decision on a section 440 motion, the time during which Petitioner's

motion seeking leave for such appeal does not toll the AEDPA statute of limitations. Similarly, because Petitioner had no procedural right to appeal the February 11, 1997 denial of reargument, he also had no right to appeal the May 2, 1997 decision on that motion to the Court of Appeals.

Because they were clearly unauthorized by New York procedural law, Petitioner's motions to the Court of Appeals seeking review of the Appellate Division decisions of February 27, 1997 and May 2, 1997, are irrelevant to the running of the AEDPA statute. Accordingly, neither the May 7, 1997 decision by the Court of Appeals denying leave to appeal the February 27, 1997 decision nor the June 26, 1997 Court of Appeals denial of leave to appeal the May 2, 1997 decision of the Appellate Division had any effect on the running of the AEDPA statute. *Accord Colon v. People*, 2002 WL 1380000 *2 (S.D.N.Y. June 27, 2002) (refusing to toll AEDPA statute during time when petitioner appealed denial of a section 440 motion to the Court of Appeals); *Edwards v. Greiner*, 2002 WL 1467708 *2 (E.D.N.Y. May 7, 2002) (same).

III. *Petitioner's State Court Collateral Attacks to His Convictions Did Not Operate As a Sufficient Toll to Render the Present Petition Timely*

In view of the foregoing, Petitioner had 184 days remaining on his AEDPA clock as of February 27, 1997—the date the Appellate Division denied leave to appeal the denial of the First Section 440 Motion. Those 184 days ran on August 30, 1997. Petitioner took no further state court ac-

tion attacking his conviction until January 27, 1998, when he submitted his second motion pursuant to Section 440 of the Criminal Procedure Law (the "Second Section 440 Motion"). The Second Section 440 Motion was therefore not filed until 151 days after the running of the AEDPA statute of limitations. Because a new motion cannot revive an already expired statute, the Second 440 Motion does not toll the statute of limitations. Petitioner's present habeas petition is time barred.[4]

 Although not referenced in the Second Circuit's order of remand, Petitioner's brief refers to three documents that he claims are essential to the merits of his petition. These documents are: (1) a "consent to search" form, executed by Evans in 1990; (2) his attorney's notes made during the lineup where Evans was identified, and (3) a report of his lineup, obtained by Evans in civil litigation commenced in 1998. Evans makes no clear claim relating these documents to the running of the AEDPA statute of limitations, but appears to claim that his AEDPA statute should not begin to run until his receipt of such documents. This argument is without merit.

In addition to the time provisions referred to above, AEDPA provides that the one year period can be deemed to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The factual predicates allegedly supporting the claims that relate to

---

4. Even assuming that Petitioner was entitled to a toll until May 7, 1997, when the Court of Appeals denied the request to appeal the February 27, 1997 decision of the Appellate Division, the petition remains untimely. This is because even assuming a toll until May 7, 1997, the statute would have nonetheless run on November 7, 1997—81 days prior to the

making of the Second Section 440 Motion. Tolling the statute until the June 26, 1997 decision of the Court of Appeals similarly makes no difference. If this were the case, the statute would have run on December 26, 1997—31 days before the Second Section 440 Motion was filed.

the documents referred to by Evans were known to him and, indeed, argued by Evans prior to and at his trial. Evans argued against the admissibility of statements made to police at a pretrial *Huntley* hearing. He further set forth, at that time, his argument regarding photographs taken at his lineup. Thus, AEDPA's provision for the commencement of the statute upon the discovery of a factual predicate underlying a claim is of no help to Evans.

Even if the statute were construed to begin to run upon the discovery of new evidence supporting a claim, it would be of no help to Evans. There is no question but that the documents relied on by Petitioner were, or could have been, long ago discovered. The consent to search form was known to Petitioner since he, himself, was the person who executed the document in 1990. Notes of his counsel were also available to Evans at trial. Finally, Evans received the substantive portion of the lineup sheet as part of the materials provided to him pursuant to *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961). Thus, although not argued by Evans, the running of AEDPA's statute of limitations is unaffected by the dates upon which he purports to have received evidence in support of his claims.

## IV. *Zarvela Does Not Require a Different Result*

Pursuant to the Second Circuit's order of remand, the court turns to consider whether the equitable principals set forth in *Zarvela* require a result other than dismissal. As noted above, *Zarvela* allows a court to stay, rather than dismiss, a habeas petition filed prior to exhaustion of state court remedies. Entry of a stay renders the date on which the first petition was filed as the relevant filing date for the purpose of AEDPA.

District courts deciding cases after *Zarvela*, called upon to rule on the timeliness of a second habeas petition, have considered the time left on the AEDPA clock when the first habeas petition was filed as well as the promptness of petitioner's post-dismissal state court activities when determining whether to retroactively stay the first-filed habeas petition.

Prompt action by a petitioner whose first-filed habeas petition was dismissed on the eve of the running of the statute of limitations has resulted in reinstatement of that petition to avoid the running of the AEDPA statute of limitations. *See Devino v. Duncan*, 215 F.Supp.2d 414, 418 (S.D.N.Y.2002) (reinstating original habeas petition where petitioner returned to state court within thirty-five days of dismissal and returned to federal court within thirteen days of exhaustion of claims in state court).

On the other hand, in cases where the first filed petition left a reasonable amount of time in which to return to state court and/or petitioner was not diligent in promptly pursuing state court remedies, it has been held that *Zarvela* is of no aid in reviving an otherwise expired statute of limitations. *See e.g., Edwards v. Greiner* 2002 WL 1467708 *3–4 (E.D.N.Y. May 7, 2002) (*Zarvela* of no help where first habeas petition is filed with 77 days remaining on AEDPA clock and petitioner failed to make any application to state court until 81 days after dismissal); *Felton v. Mazzuca*, 2002 WL 655207 *4 (S.D.N.Y. April 18, 2002) (stay of first petition would not have changed decision where petitioner failed to act within the time constraints of *Zarvela* ); *Lindo v. Lefever*, 193 F.Supp.2d 659, 664 (E.D.N.Y.2002) (*Zarvela* of no help to petitioner who did not return to state court until three months after dismissal of first habeas petition and did not file second

habeas petition until nine months are completion of state court proceedings).

Here, the first habeas petition was filed on July 29, 1996 and was dismissed on June 18, 1997. At the time of the filing, Petitioner had 271 days left on the AEDPA statute of limitations. After dismissal of the first petition on June 18, 1997, Petitioner engaged in no state court post-conviction activities until, at the earliest, January 27, 1998, when he alleges to have delivered the Second Section 440 Motion to prison officials for mailing. Thus, Petitioner waited over seven months after dismissal of the first habeas petition before taking state court action.

■ Based upon these dates, the court concludes that *Zarvela* does not require a holding that the first habeas petition should have been stayed rather than dismissed. First, the petition was not filed on the eve of the running of the statute of limitations. Additionally, Petitioner did not act in the prompt nature required to allow imposition of a stay. As noted, a *Zarvela* stay is generally conditioned upon returning to the state court within thirty days. Where, as here, a petitioner does not return to the state court for an extended period of time, it has been held that *Zarvela* does not require entry of a retroactive stay. *Accord Senor v. Greiner*, 2002 WL 31102612 *3 (E.D.N.Y. September 18, 2002) (*Zarvela* does not require stay where petitioner "failed to make the prompt trip to and from the state courts"); *Edwards v. Greiner* 2002 WL 1467708 *3–4 (E.D.N.Y. May 7, 2002) (*Zarvela* does not require imposition of a retroactive stay where first habeas petition is filed with 77 days remaining on AEDPA clock and petitioner failed to make any application to state court until 81 days after dismissal).[5]

## V. *Actual Innocence*

The court turns now to the final matter for consideration set forth in the order of remand. Namely, whether this time-barred petition should be decided on the ground of actual innocence.

In *Lucidore v. New York State Div. of Parole*, 209 F.3d 107 (2d Cir.2000), the Second Circuit posed, as an open question, whether the Constitution requires that AEDPA's limitations period be read to include an exception for cases in which a petitioner is actually innocent. The court did not decide the issue, however, because the petitioner there failed to show that he was, indeed, actually innocent of the crimes to which he had previously pled guilty.

■ As noted by the Second Circuit, a showing of actual innocence requires a petitioner to come forward with "new reliable evidence that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Lucidore*, 209 F.3d at 114, quoting, *Schlup v. Delo*, 513 U.S. 298, 299, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Actual innocence means factual innocence, not mere legal insufficiency. *Rosario v. United States*, 164 F.3d 729, 733 (2d Cir.1998), quoting, *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

Because the petitioner in *Lucidore* failed to show actual innocence, the Second Cir-

---

5. The court has already rejected, in prior opinions in this matter, any argument that Petitioner is entitled to an equitable toll of the statute of limitations. As earlier noted, equitable tolling applies only if "rare and exceptional" circumstances make it impossible to file a petition on time. *Smith*, 208 F.3d at 17; *Torres v. Miller*, 1999 WL 714349 *6 (S.D.N.Y. August 27, 1999); *Burgos v. Greiner*, 1999 WL 551229 *3 (E.D.N.Y. June 21, 1999). Petitioner alleged no facts that would justify an equitable tolling of the AEDPA statute.

cuit held that it was unnecessary to reach the question of whether such an exception should be read into the AEDPA statute of limitations. *Accord Baity v. Mazzuca,* 2002 WL 31082954 *4 (S.D.N.Y. September 17, 2002) (unnecessary to decide actual innocence exception to AEDPA where Petitioner failed to show likelihood of such innocence); *Pena v. Fischer,* 2002 WL 1203849 *2 (S.D.N.Y. June 3, 2002) (same); *Graham v. Strack,* 2002 WL 1267997 *3 (E.D.N.Y. March 29, 2002) (same).

 The conclusion here must be the same as that reached in *Lucidore* and other cases declining to address the existence of an actual innocence exception to the AEDPA statute of limitations. Like the petitioners described above, Evans has failed to make a showing that he was actually innocent of the crimes of which he was convicted.

As noted above, Evans was convicted on charges of bank robbery. He was identified in court and from a lineup by eyewitnesses. Although Evans declined to give a written statement to police, when he was questioned by officers he admitted to the crimes, identifying himself in bank surveillance photographs and commenting about how he had scared a woman in one of the banks. These same photographs were available for inspection at trial and the jurors who convicted Evans were able to compare these photographs to Evans' in-court appearance. Additional evidence implicating Evans in the bank robberies included photographs of Petitioner's car used in the robberies, which matched the car as described by an eyewitness. Even Petitioner's appellate counsel, when addressing certain trial errors in his memorandum of law to the Appellate Division, characterized the evidence presented against Evans at trial as "overwhelming."

Under these circumstances, Petitioner cannot satisfy the high burden necessary to show actual innocence. The facts and evidence presented at trial belie completely any argument "that it is more likely than not that no reasonable juror would have found [Evans] guilty beyond a reasonable doubt." *Lucidore,* 209 F.3d at 114, quoting, *Schlup v. Delo,* 513 U.S. 298, 299, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Because Petitioner fails to show actual innocence, the court need not reach the issue of whether such an exception must be read into AEDPA.

## CONCLUSION

The petition for a writ of habeas corpus is hereby denied. The Clerk of the Court is directed to close the file in this case.

SO ORDERED.