Victor CATALA, Petitioner,

v.

Floyd BENNETT, Superintendent, Elmira Correctional Facility, Respondent.

No. 02 Civ. 2857(VM).

United States District Court, S.D. New York.

July 21, 2003.

Victor Catala, Elmira, NY, pro se.

### *DECISION AND ORDER*

MARRERO, District Judge.

*Pro se* petitioner Victor Catala ("Catala"), incarcerated at New York State's Elmira Correctional Facility ("Elmira") following his conviction on a guilty plea for murder and other charges, seeks a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2254. Catala claims that: (1) by fraudulently misrepresenting themselves, police officers coerced him into giving a videotaped confession despite his request for counsel; (2) his Fourteenth Amendment Due Process rights were violated when he was not allowed to testify before the grand jury by which he was indicted; (3) the state court incorrectly interpreted the New York State First Degree Murder statute; (4) his guilty plea is constitutionally invalid under the Fourteenth Amendment because he did not enter it knowingly, voluntarily, and intelligently; (5) he received ineffective assistance of counsel; and (6) his sentence was excessive and thus constitutes cruel and unusual punishment in violation of the Eighth Amendment. The State of New York (the "State") filed an opposition on behalf of respondent Floyd Bennett, the Superintendent of Elmira. For the reasons set forth below, the Petition is DENIED.

### I. *FACTUAL BACKGROUND AND PRIOR PROCEEDINGS*

On July 30, 1997, Catala pled guilty to a six-count indictment (the "Indictment") be-

fore the County Court, Rockland County (the "Trial Court") and was convicted of Murder in the First Degree (New York Penal Law § 125.27[1][a][vii][b] ); two counts of Murder in the Second Degree (New York Penal Law § 125.25[1], [3] ); Attempted Murder in the Second Degree (New York Penal Law § 110/125.25[3] ); Burglary in the First Degree (New York Penal Law § 140.30[3] ); and Assault in the Second Degree (New York Penal Law § 120.05[2] ). Catala was sentenced to concurrent indeterminate prison terms of from twenty-five years to life on the three murder charges, from twelve and one-half to twenty-five years on the attempted murder and burglary charges, and from three and one-half to seven years on the assault charge.

Catala's conviction arose from the events of September 5, 1996, when Catala—after breaking into his estranged girlfriend Sonya Bailey's ("Bailey") apartment in Spring Valley, New York at 2:05 a.m.—stabbed Bailey to death and attempted to kill Bailey's former boyfriend, Jeffrey Fuller ("Fuller"). Catala and Bailey had lived together until August 19, 1996, when Bailey was arrested for stabbing Catala in the finger after a fight between Catala and Fuller. After the arrest, Bailey was released on bail while Catala returned to the Bronx to live with his mother. Catala did not pursue the charges against Bailey and the matter was dropped.

Almost three weeks later, in the early morning of September 5, 1996, Catala arrived at Bailey's apartment. While the State and Catala offer differing versions of what transpired next, it is undisputed that Catala's presence—wanted or unwanted—eventually led to a struggle with Bailey, and ended with his stabbing Bailey twenty-one times in the neck and chest area. Catala also engaged in a fight with Fuller, who may have been trying to protect Bailey, and stabbed Fuller as well. Bailey

died at an area hospital shortly after the attack. Catala was arrested later that day at his family's home in the Bronx. At the police station, Catala confessed to the murder and all other charges alleged in the Indictment.

At Catala's arraignment proceedings on September 26, 1996, the prosecution withdrew its notice of its intention to seek the death penalty. At the same proceedings, Catala moved, *inter alia,* to suppress his statements. The Trial Court granted a hearing on the matter, but on June 9, 1997, before the hearings could be held, Catala pled guilty to all charges in the Indictment.

One month later, on July 9, 1997, Catala reversed this decision and moved to withdraw his plea before the scheduled sentencing date. By Decision and Order, dated July 27, 1997, the Trial Court denied Catala's motion on the grounds that Catala had knowingly, intelligently, and voluntarily entered into his guilty plea, and that the record did not support his claim of ineffective assistance of counsel. On July 30, 1997, the Trial Court sentenced him as described above.

Catala appealed his conviction to the New York Supreme Court, Appellate Division (the "Appellate Division"), which affirmed the conviction. *See People v. Catala,* 260 A.D.2d 393, 686 N.Y.S.2d 311 (2d Dept.1999). The judgment became final (the "Final Judgment") on September 23, 1999, when the New York Court of Appeals (the "Court of Appeals") denied Catala's application for leave to appeal. *See People v. Catala,* 93 N.Y.2d 1043, 697 N.Y.S.2d 875, 720 N.E.2d 95 (N.Y.1999).

Almost a year after the Final Judgment, Catala filed, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, a post-conviction motion, dated August 17, 2000, to vacate the judgment of conviction (the "Post–Conviction Motion"). By Deci-

sion and Order dated November 27, 2000, the Trial Court denied the Post–Conviction Motion. Catala then filed an application for a certificate granting leave to appeal the Trial Court's decision, which the Appellate Division denied on April 2, 2001 (the "Denial"). Catala subsequently filed the instant Petition, dated August 23, 2001, with this Court on September 4, 2001.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed "new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). One of the new restrictions imposed by AEDPA is a one-year statute of limitations on all petitions for a writ of habeas corpus filed after the effective date of AEDPA, which was April 24, 1996.[1] *See* 28 U.S.C. § 2244(d). Since the Petition was filed in 2001, it falls into this category.

The AEDPA provides in relevant part that

[a] 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest ... date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review....

§ 28 U.S.C. 2244(d)(1)(A). A petitioner's conviction becomes final when his time to seek review in the United States Supreme Court by writ of certiorari expires, which

is ninety days after the date on which direct review of the case has been completed by the highest court in the state. *See Jimenez v. Walker*, 166 F.Supp.2d 765, 770 (E.D.N.Y.2001) (quoting *Ross*, 150 F.3d at 98). In addition, the limitations period is tolled when a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. *See* § 28 U.S.C. 2244(d)(2).

### B. *TIMELINESS OF THE PETITION*

In the instant case, Catala's conviction became final, and the one-year AEDPA limitations period began to run, on September 23, 1999, when the Court of Appeals denied his petition for leave to appeal. Catala let his claim lie fallow, during which time the statute was running, for 329 days until August 17, 2000, when he filed the Post–Conviction Motion. In accordance with the tolling allowances of § 2244(d)(2), the relevant period was tolled from August 17, 2000 until April 2, 2001, when the Appellate Division denied Catala's application for leave to appeal the denial of his CPL 440.10 motion. In filing the Petition, Catala dated it August 23, 2001, a total of 143 days after the Denial. Thus, adding the two chargeable time periods together yields a total of 472 days, far beyond the one-year statute of limitations.

■ However, ninety days can be discounted from this 472–day period to account for the time between the Final Judgment and the expiration of Catala's time to seek direct review by writ of certiorari in the United States Supreme Court. *See Valverde v. Stinson*, 224 F.3d 129, 132 (2d Cir.2000). Consequently, the sum of the chargeable time periods here is 382 days,

---

1. Petitions filed before the effective date of AEDPA are also subject to the one-year statute of limitations, but the limitations period begins on the effective date of AEDPA, rather

than the date of the final judgment in the case. *See Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir.1998).

which still exceeds the one-year time limit for habeas writ applications under the AEDPA.

Catala does not dispute the fact that his petition is facially untimely. He concedes that the judgment against him became final on September 23, 1999, but argues that, in addition to subtracting ninety days from the limitations period to account for review by the United State Supreme Court, the statute of limitations should be tolled from September 23, 1999 until December 15, 1999 because the Court of Appeals did not notify him of its Final Judgment until December 15, 1999, 82 days after the decision had been rendered. If this Court were to accept Catala's chargeable time calculation, the Petition would be considered filed 300 days after the Final Judgment. Thus, the Court is presented with the question of whether the time between the Final Judgment (September 23, 1999) and Catala's alleged actual knowledge of the judgment (December 15, 1999) should be equitably tolled.

■ Since the AEDPA one-year period for filing a habeas corpus petition is a statute of limitations rather than a jurisdictional bar, federal courts may equitably toll the period. *See Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000). "Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Warren v. Garvin,* 219 F.3d 111, 113 (2d Cir. 2000).

■ In order to qualify for equitable tolling, a petitioner must demonstrate that he acted with "reasonable diligence" during the period he wishes to have tolled, but that despite such efforts, " 'rare and exceptional circumstances' ... 'beyond his control' " prevented him from filing his petition on time. *Smaldone v. Senkowski,* 273 F.3d 133, 138 (2d Cir.2001) (quoting *Smith,* 208 F.3d at 17, and *Sandvik v. United States,* 177 F.3d 1269, 1271 (11th

Cir.1999)); *see, e.g., De Jesus v. Miller,* 215 F.Supp.2d 410 (S.D.N.Y.2002) (citing extraordinary circumstances as including petitioner's timely filing of first habeas petition, detrimental reliance on the controlling law at that time in deciding to request withdrawal of first habeas petition, the court's amended order clarifying that roughly eight months remained of the one-year statute of limitations under the law prevailing at that time, and an unforeseeable Supreme Court decision, the effect of which was to extinguish six months that the petitioner and the court earlier believed was tolled). When such circumstances occur early in the limitations period, the Court should also examine whether the petitioner diligently pursued his application in the remaining time. *See Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir.2001).

■ These requirements pose a heavy burden for Catala to satisfy, and he fails to persuade the Court that his situation involves such exceptional circumstances. Catala contends that he was not informed of the Final Judgment by the Court of Appeals until he contacted them himself by letter dated December 8, 1999. However, "in calculating the limitations period [in habeas cases], 'whether the petitioner or his attorney received notice of the court's decision on the relevant motions by mail or otherwise ... is irrelevant' " *Shin v. Walker,* No. 97 Civ. 7048, 1999 WL 345285, at *2 (E.D.N.Y. May 24, 1999) (quoting *Geraci v. Senkowski,* 23 F.Supp.2d 246, 253 (E.D.N.Y.1998)). Thus, the period is calculated from when judgment is entered, not when the decision is received by petitioner, *id.* at *1–2, and Catala cites no legal authority to the contrary.

■ Even if the Court were to assume that the alleged delay in notification was extraordinary, Catala would still have "to demonstrate a causal relationship between

the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing...." *Valverde,* 224 F.3d at 134. Such a demonstration "cannot be made if [Catala], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Id.* Here, Catala allegedly learned of the Final Judgment with 283 days left to file a habeas petition, which the Court considers more than sufficient to make a timely filing, especially in light of the fact that many of Catala's federal habeas claims were similar to those he raised in his state appeals and that Catala prepared the Post–Conviction Motion, which also made similar arguments to the Petition, during this time period. *See White v. Garvin,* No. 97 Civ. 3244, 1997 WL 626396, at *2 (S.D.N.Y. Oct.8, 1997) (finding filing of habeas to be untimely "[b]ecause petitioner raised the same claims in his prior appeals, [and thus] he did not have to do much, if any, legal research or writing to complete his petition."); *Berger v. Stinson,* 977 F.Supp. 243, 245 (W.D.N.Y.1997) ("[I]t is difficult to see why an extended period of time was necessary to prepare and file a habeas corpus petition based on the same facts" as a previous state collateral motion).

In addition, while the nearly eight-month period during which the Trial Court and Appellate Division considered the Post–Conviction Motion does not count toward chargeable time under the statute of limitations, Catala still had the opportunity during this period to prepare the Petition. Indeed, Catala had nearly two years from the Final Judgment until the expiration of the statute of limitations, an extensive period of time that should have proved ample considering the similarity in his claims from his previous state appeals. Thus, Catala's substantial delay in filing the Petition does not persuade the Court that Catala acted with reasonable diligence in pursuing his habeas application. *See*

*Mandarino v. United States,* No. 98 Civ. 590, 1998 WL 729703, at *2 (S.D.N.Y. Oct. 16, 1998) (dismissing a habeas application despite petitioner's claim that he was not notified of a final judgment in his case until after the one-year time limit had begun because, *inter alia,* petitioner "still had a period of time, albeit a brief one, when he could have filed a timely motion and sought leave to expand on the motion"); *Smith v. Roe,* No. 98 Civ. 2746, 1998 WL 657667, at *3 (C.D.Cal. June 8, 1998) (dismissing petitioner's allegation of extraordinary circumstances by noting that petitioner still had four months in which to file).

The Court acknowledges that under some circumstances, some courts in this Circuit have permitted equitable tolling in connection with the applications of *pro se* habeas petitioners who proclaim that they were informed late of final judgments in their cases. However, those courts have typically considered such relief with regard to petitioners who were informed of the final judgment *after the time* for seeking habeas had fully expired. *See, e.g., Hunter v. Greiner,* No. 99 Civ. 4191, 2000 WL 245864, at *3–4 (S.D.N.Y. Mar.3, 2000); *Vasquez v. Greiner,* 68 F.Supp.2d 307, 310 (S.D.N.Y.1999).

Finally, while it is still an open question in the federal courts whether the AEDPA's statute of limitations can be waived if a petitioner makes a claim of actual innocence, *see Whitley v. Senkowski,* 317 F.3d 223, 225 (2d Cir.2003), some courts in this Circuit have considered the possibility of such a waiver. *See Lucidore v. New York State Div. of Parole,* No. 99 Civ. 2936, 1999 WL 566362 (S.D.N.Y. Aug.3, 1999) (finding that petitioner's claim of actual innocence was unfounded and therefore there was no need to decide if actual innocence exception to AEDPA's statute of limitations existed); *Alexander v. Keane,* 991 F.Supp.

474

329, 339–40 (S.D.N.Y.1998) (same). In the instant case, Catala does not attempt an actual innocence claim, and such a claim would be difficult to make considering Catala's guilty plea. Thus, Catala has not provided any compelling grounds for this Court to toll the filing deadline clearly established by the AEDPA, and consequently the Court is prevented from reviewing his application for a writ of habeas corpus on the merits.

### III. *CONCLUSION AND ORDER*

For the reasons discussed above, Catala's petition for a writ of habeas corpus is denied. As Catala's habeas petition is time-barred by the expiration of the AEDPA's statute of limitations, and because his circumstances disqualify him for equitable tolling, a certificate of appealability is not warranted and will not issue. Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Accordingly, it is hereby

ORDERED that Catala's petition for a writ of habeas corpus is DENIED.

The Clerk of Court is directed to close this case.

**SO ORDERED:**